[No. 35555. *En Banc.* July 20, 1961.]

F. KEMPER FREEMAN *et al., Appellants,* v. RETAIL CLERKS UNION LOCAL No. 1207 *et al., Respondents.*\*

*Bogle, Bogle & Gates, J. Tyler Hull,* and *George N. Prince,* for appellants.

*Bassett, Davies & Roberts* and *Stephen V. Carey,* for respondents.

\*Reported in 363 P. (2d) 803.

FOSTER, J.—F. Kemper Freeman and E. C. Case, a limited partnership, doing business as Bellevue Properties, appeal from a judgment denying them an injunction. Respondents are Retail Clerks Union Local No. 1207, an unincorporated association, Retail Clerks Union Local No. 1105, an unincorporated association, and three union officers. Appellants sued to enjoin respondents from picketing the store of J. C. Penney and Company, a tenant in the appellants' modern shopping center in Bellevue.

The respondents pleaded as an affirmative defense that J. C. Penney and Company was engaged in an industry affecting commerce under the labor management relations act, 1947 (29 U.S.C., chapter 7, §§ 141-187), and that the picketing was protected thereunder. It was pleaded therefore that the state courts had no jurisdiction. Stated in another way, the affirmative defense was that the United States had pre-empted jurisdiction by act of Congress.

The superior court held that it had jurisdiction to enjoin the picketing because there was a trespass on the appellants' real property. The injunction, however, was denied upon the authority of *Marsh v. Alabama*, 326 U. S. 501, 90 L. Ed. 265, 66 S. Ct. 276.

Appellants own and operate an extensive modern shopping center in Bellevue, Washington, in which there are numerous stores, banks and other enterprises. Among other tenants, J. C. Penney and Company leases store space from the appellants in which it operates an up-to-date department store. Although J. C. Penney and Company operate a number of other stores in Seattle and vicinity which have collective bargaining agreements with the respondent union, it has no such contract with respect to its Bellevue store.

Seeking to induce the employees of the Bellevue store of J. C. Penney and Company to join the respondent union, that union picketed that store.

Because they own the fee to the entire shopping center, appellants sought to enjoin the picketing on the ground that it constituted a trespass.

There is no authoritative decision as to whether the owner

of a shopping center may enjoin a labor union from picketing its tenants. The matter was expressly left open by the United States Supreme Court in *Amalgamated Meat Cutters & Butcher Workmen of North America, Local No. 427, AFL v. Fairlawn Meats, Inc.*, 353 U. S. 20, 1 L. Ed. (2d) 613, 77 S. Ct. 604.[1] There is one officially reported decision dealing with the subject, *Nahas v. Local 905, Retail Clerks International Ass'n*, 144 Cal. App. (2d) 808, 301 P. (2d) 932.[2]

■ *San Diego Bldg. Trades Council v. Garmon*, 359 U. S. 236, 3 L. Ed. (2d) 775, 79 S. Ct. 773, decided that:

" . . . When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted."

This case presents such a controversy. It is arguable that under the labor management relations act, 1947, §§ 7 and 8 (29 U.S.C., chapter 7, §§ 157, 158), Congress has pre-empted the field and vested the National Labor Relations Board with exclusive jurisdiction in the premises.

29 U.S.C., chapter 7, § 157 (1958 ed.) (labor management relations act, 1947, § 7), is as follows:

---

[1]"One final point remains to be considered. At two of respondent's stores, located in suburban shopping centers, the picketing occurred on land owned by or leased to respondent though open to the public for access to the stores. As one of the reasons for finding the picketing unlawful, the Court of Appeals recited this fact, and 'trespassing upon plaintiff's property' is one of the activities specifically enjoined. Whether a State may frame and enforce an injunction aimed narrowly at a trespass of this sort is a question that is not here. Here the unitary judgment of the Ohio court was based on the erroneous premise that it had power to reach the union's conduct in its entirety. Whether its conclusion as to the mere act of trespass would have been the same outside of the context of petitioner's other conduct we cannot know. . . ." *Amalgamated Meat Cutters & Butcher Workmen of North America, Local No. 427, AFL v. Fairlawn Meats, Inc.*, 353 U. S. 20, 1 L. Ed. (2d) 613, 77 S. Ct. 604.

[2]There are two unofficially reported decisions by inferior state courts: *State v. Williams*, 37 CCH Lab. Cas., ¶ 65708 (Baltimore Crim. Ct., 1959), 44 L.R.R.M. 2357, noted in 73 Harv. L. Rev. 1216 and 1960 Duke L. Jour. 310; *People of Illinois v. Mazo*, 44 L.R.R.M. 2881. See, also, Shopping Centers and Labor Relations Law, 10 Stanford L. Rev. 694.

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158 (a) (3) of this title."

29 U.S.C., chapter 7, § 158 (b) (Supp. I, 1958 ed.) (labor management relations act, 1947, § 8 (b) as amended), provides, in part:

"It shall be an unfair labor practice for a labor organization or its agents—

"(1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title . . .

"(4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise, handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

"(A) forcing or requiring any employer or self-employed person to join any labor or employer organization or to enter into any agreement which is prohibited by subsection (e) of this section;

" . . .

"(C) forcing or requiring any employer to recognize or bargain with a particular labor organization as the representative of his employees if another labor organization has been certified as the representative of such employees under the provisions of section 159 of this title;

" . . .

"(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor

organization is currently certified as the representative of such employees: . . ."

The supreme court of Pennsylvania in *Navios Corp. v. National Maritime Union of America*, 402 Pa. 325, 166 A. (2d) 625, affirmed the denial of an injunction to a foreign charterer of a foreign vessel then discharging cargo in Philadelphia. The decision was that the picketing was at least arguably subject to the labor management relations act, §§ 7 and 8, and that *San Diego Bldg. Trades Council v. Garmon, supra*, required the Pennsylvania courts to defer to the exclusive competence of the National Labor Relations Board over the subject matter. The charterer's argument in support of the state jurisdiction was that the union activities involved an interference with the internal economy of a foreign ship and its foreign crew within the restrictive scope of *Benz v. Compania Naviera Hidalgo*, 353 U. S. 138, 1 L. Ed. (2d) 709, 77 S. Ct. 699.

That claim was much stronger for state court jurisdiction than appellants' asserted property right is here. Our recent mandate in *State ex rel. Yellow Cab Service v. Superior Court*, 53 Wn. (2d) 644, 333 P. (2d) 924, to the superior court to take jurisdiction of an injunction suit against picketing because of the remote or infinitesimal relation to interstate commerce was reversed by the United States Supreme Court without opinion upon the authority of the *Garmon* case, *supra. Superior Court of Washington for King County v. Washington ex rel. Yellow Cab Service*, 361 U. S. 373, 4 L. Ed. (2d) 380, 80 S. Ct. 400.

Under the quoted provision of the labor management relations act, we think that this controversy is within the "arguably subject" rule of *San Diego·Bldg. Trades Council v. Garmon, supra*, and that the superior court lacked jurisdiction to determine the controversy.

While the trial court heard and decided the cause on the merits, nevertheless, it denied appellant any relief and dismissed the action. But it had no jurisdiction in the premises, and should have dismissed for that reason. It is,

therefore, unnecessary to remand for the entry of another judgment dismissing the suit for lack of jurisdiction.

Affirmed.

FINLEY, C. J., MALLERY, ROSELLINI, and OTT, JJ., concur.

HILL, J. (concurring in the result)—I would affirm the trial court, which refused to restrain the picketing by the Retail Clerks Union. The pickets are not employees; the appellants have no contractual relationship with them, actual or potential. The only controversy between them is whether the pickets can go upon the property of the appellants with their signs, which on one side read:

"PLEASE DO NOT PATRONIZE THE NON-UNION EMPLOYEES OF THIS STORE.

"HELP US TO PERSUADE THE NON-UNION EMPLOYEES OF THIS STORE TO JOIN THE UNION AND TO BETTER THE WAGES, HOURS AND WORKING CONDITIONS OF EMPLOYEES OF ALL THE STORES IN KING COUNTY.

RETAIL CLERKS UNION, AFL-CIO.
LOCALS 1105 AND 1207."

On the other side, the signs read:

"PLEASE DO NOT PATRONIZE THE NON-UNION EMPLOYEES OF THIS STORE.

"THE MAJORITY OF THE EMPLOYEES OF THIS STORE ARE NOT MEMBERS OF THE

RETAIL CLERKS UNION, AFL-CIO.
LOCALS 1105 AND 1207."

The trial judge, in a comprehensive and painstaking "Memorandum Decision," discussed the conflict between property rights and freedom of speech and said, *inter alia*:

"A review of the authorities reveals that there are certain factual situations where virtually every court would say 'No' to persons desiring to come upon privately-owned land for the purpose of exercising free speech. There are also situations where virtually every court would require an owner of private property to suffer an infringement of his right to control the property in favor of free speech. Research reveals there to be five factors which, if present, any court would be justified in weighing the equities of the parties and in considering the right of the union to come upon private property to engage in peaceful picketing.

"Courts uniformly have considered tolerating what would otherwise be an unlawful trespass when a person or persons come upon private property for the purpose of exercising his of their right of free speech when all or some of the following factors are present:

"1. When the private property owner designs his property for use by the general public in such a manner as to make it difficult to impossible to distinguish its physical characteristics from publicly-owned property similarly so devoted;

"2. The exercise of the right of free speech is for the purpose of making a communication to persons naturally upon the premises as a result of the inherent nature of the primary use to which the property is devoted;

"3. A similar communication clearly would be permitted under identical circumstances had the property been public;

"4. Interference with the owner's fundamental rights of privacy or personal use and occupancy is not involved as distinguished from control, and no direct pecuniary loss will result to the owner;

"5. The trespasser has no place or means available as an alternate, or the only alternate would be unrealistic or impractical to the point where there exists a serious restriction upon the trespasser's ability to communicate as effectively as would naturally and normally be expected were the legal title in public ownership.

"Under such circumstances, the courts weigh the magnitude and character of the invasion of the property rights against the seriousness and nature of the restrictions upon the trespasser's freedom of speech."

The trial court found the existence of all five qualifying factors and held that the picketing could not be enjoined. I would agree.

The majority holds that this weighing of the rights of the parties was unnecessary; that the trial court had no jurisdiction to consider the matter inasmuch as the United States had pre-empted jurisdiction of all controversies involving the picketing of an industry affecting interstate commerce.

The end result is the same—the pickets may continue whether we affirm the trial court or hold that it had no jurisdiction. There is, however, a significant distinction in the rationale by which the end result is reached.

There is no labor dispute between the J. C. Penney Com-

pany and its employees. Naively stated, the union thinks the employees should join the union and is merely seeking to advise the public not to patronize the nonunion employees of the store. To carry out this entirely laudable and legal purpose, they are exercising their freedom of communication by carrying signs which contain information the union desires to impart to the customers of the J. C. Penney store. The courts have upheld their right to use the streets for such a purpose, if the picketing is peaceful.

Under ordinary circumstances, the owner of property can control who goes on it and for what purpose; however, a formal dedication to public use is not necessary to greatly limit that control. The legislature has imposed limitations upon the owner's right to exclude persons from his premises or to refuse service to them on account of race or creed, if the premises are used as a place of public resort. In other instances, entirely apart from the legislative action, the courts have placed a limitation on the control that an owner might exercise over his property, as in company towns.

In this case, it is conceded that legal title to the property, over which the pickets carried their signs, was in the appellants — and not in the public. The issue presented was whether the property owners, despite their precautions and efforts to protect their right to control the use of the property, had lost the right to prevent the pickets from carrying their signs. (I take it that the pickets, sans signs, were just like other members of the public, and entitled to be where they were.)

As I have indicated, I have no quarrel with the determination of the trial court: That, under the circumstances here existing, the owners had lost their right to ban picketing for informational purposes on their premises. The appellants are before the court as property owners who do not want certain people to do certain things on their property. They are not here as employers, or as individuals having any present or foreseeable future relationship with the picketing union. Just how or on what theory the appellants could get a hearing before the National Labor Relations

Board (to determine whether pickets are justifiably on their property) is not clear to me.

If instead of being a shopping center, the property in question was merely a forty-acre pasture for contented cows, but a desirable place from which pickets could display signs imparting information (relative to the nonunion status of the employees of the J. C. Penney Company) to the customers of that company, there could be no question that the owner would be entitled to an injunction—not to restrain the picketing, but to prevent their trespass on property where they had no right to be.

Yet the logic of the pre-emption of jurisdiction, as applied by the majority, is that trespass means nothing. Given peaceful picketing and a concern engaged in interstate commerce, then the state courts are divested of jurisdiction over any controversy which might arise.

It should be noted that the question with which we are here concerned was expressly reserved in *Amalgamated Meat Cutters & Butchers Workmen of North America, Local No. 427, AFL v. Fairlawn Meat, Inc.* (1957), 353 U. S. 20, 1 L. Ed. (2d) 613, 77 S. Ct. 604. Unless the court there believed it possible to frame an injunction and enforce an injunction aimed narrowly at a trespass, it did a vain and useless thing in making a remand to the state court.

Until the Supreme Court of the United States holds that the law of trespass is no longer applicable to pickets under any circumstances, the state courts not only have the right, but the duty to determine the extent to which pickets may utilize the property of nonparticipants in a labor dispute.

DONWORTH, WEAVER, and HUNTER, JJ., concur with HILL, J.