214 So.2d 913

**Clifford TAGGART et al.**

v.

**WEINACKER'S, INC.**

**1 Div. 295.**

Supreme Court of Alabama.

Sept. 19, 1968.

Rehearing Denied Nov. 7, 1968.

Otto E. Simon, of Simon & Wood, Mobile, for appellants.

Howell, Johnston & Langford and M. A. Marsal, Mobile, for appellee.

COLEMAN, Justice.

Respondents appeal from a decree denying their motion to dissolve a temporary injunction.

Complainant filed a verified bill of complaint averring that it possessed and operated a shopping center at the intersection of Government and Catherine streets in Mobile, and that the continuing trespass by respondents on complainant's lot deprived it of peaceful possession and caused it irreparable injury.

On a petition, treated as an amendment to the bill, the court granted a temporary injunction restraining the trespass.

Respondents filed a plea to the jurisdiction asserting that state court jurisdiction of the subject matter had been pre-empted by the National Labor Relations Act and that the National Labor Relations Board had taken jurisdiction of the dispute between these parties in proceedings filed by respondents with the Board; and that the Board had taken jurisdiction and had certified the respondent union as bargaining representative of the employees of complainant on April 16, 1964, prior to filing of complainant's bill on January 21, 1965. It appears that proceedings were had before the Board, which did not include the subject matter of the instant suit. The court overruled the plea.

Respondents then filed an answer and motion to dissolve the temporary injunction, in which respondents expressly reserved exception to the ruling on the plea; and again raised objection to the court's jurisdiction, and prayed for dissolution of the injunction.

The cause was heard and was submitted at conclusion of the hearing on verified bill, petition, affidavits, answer, and motion to dissolve.

The court again decided that it had jurisdiction and denied the motion to dissolve. respondents appealed.

### Motion to affirm.

Respondents have made ten assignments of error and argue them in two groups. Respondents argue assignments 2, 3, 4, 7, and 10 in bulk in one group, and assignments 1, 5, 6, 8, and 9 in bulk in another group.

Complainant says that some of the assignments in each group are bad and not sufficient to invite review, are not related to other assignments argued in bulk in the same groups, and, therefore, the other assignments in the two groups ought not to be considered and the decree appealed from should be affirmed.

It is true that where unrelated assignments are argued together, and one

is without merit, the others will not be considered; National Association For The Advancement of Colored People v. State, 274 Ala. 544, 150 So.2d 677; cases cited in Ala.Digest, Appeal & Error, ☞736; but this rule applies only when the assignments are not kindred or related. Southern Electric Generating Company v. Lance, 269 Ala. 25, 33, 110 So.2d 627. Where the assignments of error are so related that they may be treated as being predicated upon a single argument, the fact that they are argued in bulk is not objectionable. Hartford Fire Ins. Co. v. Clark, 258 Ala. 141, 152, 61 So.2d 19; Southern Electric Generating Company v. Lance, supra; Socier v. Woodard, 264 Ala. 514, 518, 88 So.2d 783; Bryan v. W. T. Smith Lumber Co., 278 Ala. 538, 542, 179 So.2d 287. In a case where three assignments were argued together and were related or kindred, this court did consider them separately. Gilliland & Echols Farm Supply & Hatchery v. Credit Equipment Corp., 269 Ala. 190, 195, 112 So.2d 331.

■ Where several assignments are governed by the same legal principles and argument, it is not objectionable to argue them in bulk in the brief. Hartford Fire Ins. Co. v. Clark, supra; Socier v. Woodard, supra; Bryan v. W. T. Smith Lumber Co., supra.

In the first group, assignments 2, 3, 4, 7, and 10 are argued together. They recite:

"2. The trial court erred in its order of January 25, 1965 overruling the Respondents' plea to the jurisdiction. (Transcript pg. 73).

"3. The trial court erred in its order of April 1, 1965 wherein the court decreed it had jurisdiction over the subject matter of the suit. (Transcript pg. 82).

"4. The trial court erred in its order of April 1, 1965 wherein the court decreed that jurisdiction had not been divested by the National Labor Relations Act, as amended. (Transcript pg. 82).

" . . . . . . . . . . . .

"7. The trial court's ruling of April 1, 1965 that the court had jurisdiction of the subject matter involved in the suit was contrary to the law of this cause. (Transcript pg. 82).

" . . . . . . . . . . . .

"10. The order of the trial court on April 1, 1965 holding that the primary jurisdiction of the subject matter in dispute had not been pre-empted by the National Labor Relations Board and denying the Respondents' Motion to Dissolve the Writ of Temporary Injunction and to Dismiss the Complainants' (sic) Verified Bill and Petition was contrary to the law in this cause. (Transcript pg. 82)."

Complainant argues that assignment 2 is bad because it fails to show how or in what way the court erred. We are not inclined to agree with this argument. The assignment says the court erred in overruling respondents' plea to the jurisdiction. This shows how the court erred.

Complainant says assignments 7 and 10 are bad and complainant is probably correct. These assignments do not assert that the court erred and merely say that the ruling was contrary to law. National Association For The Advancement of Colored People v. State, supra, and Andrews v. May, 277 Ala. 248, 249, [1], 168 So.2d 619.

■ Even if assignments 2, 7, and 10 are bad, however, all the assignments in this group are related because they are governed by the same legal principles and argument, to wit, that the trial court had been divested of jurisdiction because the National Labor Relations Act had pre-empted jurisdiction of the subject matter of the suit. Assignments 3 and 4 appear to be good assignments and we will consider them, although other related assignments argued in the group are bad. Gilliland & Echols Farm Supply & Hatchery v. Credit Equipment Corp., supra.

In the second group of assignments, which are argued together, is assignment 1 which recites:

"1. The trial court erred in issuing a Writ of Injunction on January 22, 1965. (Transcript pg. 14)."

 The order of January 22, 1963, was made without the hearing provided for by § 1054, Title 7, Code 1940. No appeal lies from the order granting the injunction unless the order is shown by the record to have been made, or purports to have been made, after a hearing as provided by § 1054, Title 7, Code 1940 (§ 8304, Code 1923). Berman v. Wreck-A-Pair Building Co., 234 Ala. 293, 297, 175 So. 269. The order of January 22, 1965, granting the injunction will not support an appeal.

In an appeal involving a similar order granting a temporary injunction without a hearing as provided by § 1054, Title 7, this court said:

"In our opinion, the assignments of error which challenge the decree of March 19, 1960, in so far as it orders the issuance of a temporary injunction present nothing for our review, for an appeal does not lie from an order or decree granting a temporary injunction unless the record shows that the order or decree was made or purported to be made after a hearing as provided by § 1054, Title 7, Code 1940. (Citations Omitted)

"The appellant's remedy in regard to the temporary injunction was by way of motion to dissolve under the provisions of § 1052, Title 7, Code 1940, and if the ruling was adverse to appeal therefrom as provided by § 757, Title 7, Code 1940." Brooks v. Everett, 271 Ala. 380, 384, 124 So.2d 100, 104.

See also: WGOK, Inc. v. WMOZ, Inc., 275 Ala. 264, 265, 154 So.2d 22.

Complainant says that assignment 1 presents nothing for review. We agree.

Complainant says further that because assignment 1 presents nothing for review

and is argued in bulk together with assignments 5, 6, 8, and 9, none of the assignments argued in bulk in this group are to be considered.

We are of opinion that all assignments in the second group are related because they depend upon the same legal principles and argument, to wit, that the First and Fourteenth Amendments to the Constitution of the United States do not permit the state to enjoin respondents from picketing on complainant's property, and, therefore, that the court erred in denying the motion to dissolve. Assignment 8 recites:

"8. The trial court erred in its order of April 1, 1965 denying the Respondents' Motion to Dissolve the Writ of Temporary Injunction and to Dismiss the Complainants' (sic) Verified Bill and Petition. (Transcript pg. 82)."

 Assignment 8 asserts that the court erred and states how the court erred. We think it has not been shown that this is a bad assignment, and we will consider it.

For these reasons, the motion to affirm is overruled.

*On the merits.*

Respondents argue that the trial court erred in two particulars, first, in determining that it had jurisdiction of the subject matter of the suit.

In support of this argument, respondents cite a number of decisions which hold that under the Labor Management Relations Act as amended, U.S.C.A., Title 29, § 141, et seq., state courts are excluded from jurisdiction over peaceful picketing and that exclusive jurisdiction has been conferred on the National Labor Relations Board. Respondents say that the concerted activity of picketing is subject to control and regulation by the Board, that the Board has assumed jurisdiction of the dispute between these parties in other particulars, and that complainant's only remedy is by bringing the subject matter of the instant suit to the attention of the Board, which has not

expressly declined jurisdiction over the activity here enjoined.

In support of this contention, respondents cite San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, in which the court undertook to state the rule of federal preemption as follows:

" . . . . When the exercise of state power over a particular area of activity threatened interference with the clearly indicated policy of industrial relations, it has been judicially necessary to preclude the States from acting. However, due regard for the presuppositions of our embracing federal system, including the principle of difusion of power not as a matter of doctrinaire localism but as a promoter of democracy, has required us not to find withdrawal from the States of power to regulate where the activity regulated was a merely peripheral concern of the Labor Management Relations Act. (Citation Omitted) Or where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act.

"When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. . . . .

" . . . . .

" . . . . When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted. (Citation omitted)." (359 U.S. at pages 243 and 244, 79 S.Ct. at pages 778 and 779, 3 L.Ed.2d at pages 782 and 783)

The last cited case was the second appeal to the United States Supreme Court in the same lawsuit. In the first appeal, 353 U.S. 26, 77 S.Ct. 607, 609, 1 L.Ed.2d 618, the court had vacated the judgment of a state court enjoining peaceful picketing of a retail lumber yard. As we understand the opinion on second appeal in 359 U.S. at page 246, 79 S.Ct. at page 780, 3 L.Ed.2d at page 784, the court held that because the " . . . . National Labor Relations Board has not adjudicated the status of the conduct for which the State . . . . seeks to give a remedy in damages, and since such activity is arguably within the compass of § 7 or § 8 of the Act, the State's jurisdiction is displaced."

In opinion on first appeal in 1 L.Ed.2d, the court vacated the injunction on authority of two other cases decided the same day; i.e., Guss v. Utah Labor Relations Board, 353 U.S. 1, 77 S.Ct. 598, 609, 1 L.Ed.2d 601, and Amalgamated Meat Cutters etc. v. Fairlawn Meats Inc., 353 U.S. 20, 77 S.Ct. 604, 1 L.Ed.2d 613.

In Guss, the National Board had declined jurisdiction of charges of unfair labor practices brought by the union against an employer. The National Board declined to act, but did not cede jurisdiction to the state agency as authorized by § 10 (a) of the National Act. The union filed the same charges with the Utah Labor Relations Board which found that it had jurisdiction and granted relief. When the case reached the United States Supreme Court, that court held that the proviso to § 10 (a) is the exclusive means whereby states may be enabled to act concerning the matters which Congress has entrusted to the National Board; that the activity complained of was an unfair labor practice under the National Act; that, although the National Board had declined to act, it had not ceded jurisdiction in the only authorized way; and therefore, the state agency was powerless to act.

In Fairlawn, a state court enjoined the union from picketing the premises of an

employer who operated three meat markets in separated localities, from trespassing upon the employer's premises, and from exerting secondary pressure on the suppliers of the employer. The United States Supreme Court assumed that " . . . . it was obvious that the Board would decline jurisdiction." 353 U.S. at page 23, 77 S.Ct. at page 605, 1 L.Ed.2d at page 615. The writer of the Summary, at page 601 in 1 L. Ed.2d, states that the court vacated the judgment granting the injunction on the ground that even if the National Board would obviously decline jurisdiction, the state court had no power to enjoin the union conduct involved because it was of that kind regulated by the National Board. The concluding paragraph of the court's opinion recites:

"One final point remains to be considered. At two of respondent's stores, located in suburban shopping centers, the picketing occurred on land owned by or leased to respondent though open to the public for access to the stores. As one of the reasons for finding the picketing unlawful, the Court of Appeals recited this fact, and 'trespassing upon plaintiff's property' is one of the activities specifically enjoined. Whether a State may frame and enforce an injunction aimed narrowly at a trespass of this sort is a question that is not here. Here the unitary judgment of the Ohio court was based on the erroneous premise that it had power to reach the union's conduct in its entirety. Whether its conclusion as to the mere act of trespass would have been the same outside the context of petitioner's other conduct we cannot know. The judgment therefore is vacated and the case remanded for proceedings not inconsistent with this opinion." (353 U.S. at page 24, 77 S.Ct. at page 606, 1 L.Ed.2d at pages 616 and 617)

The instant injunction is " . . . . aimed narrowly at a trespass of this sort . . . . " and the question not presented in *Fairlawn* is presented here. Moreover,

as we understand *Fairlawn,* the opinion does not indicate that the picketing on employer's property was carried on in such a manner as to obstruct the customers of the complainant in entering and leaving entrances to the store building.

In a recent case, Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc, 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603, decided May 20, 1968, the court reversed a judgment of the Supreme Court of Pennsylvania enjoining peaceful picketing in a shopping center. The United States Supreme Court said:

" . . . . All we decide here is that because the shopping center serves as the community business block 'and is freely accessible and open to the people in the area and those passing through,' Marsh v. [State of] Alabama, 326 U.S. [501] at 508, [66 S.Ct. 276] 90 L.Ed. [265] at 269, the State may not delegate the power, through the use of its trespass laws, wholly to exclude those members of the public wishing to exercise their First Amendment rights on the premises in a manner and for a purpose generally consonant with the use to which the property is actually put." (391 U.S. at page 319, 88 S.Ct. at page 1609, 20 L.Ed.2d at pages 612 and 613)

Although complainant avers in its bill that it operates "a shopping center," we do not think that the findings of the trial court justify the conclusion that complainant's premises are a shopping center such as the one in *Logan Valley Plaza* where the perimeter of Logan Valley Mall was a little less than 1.1 miles; the Mall contained two commercial enterprises, Weis Markets and Sears, Roebuck and Co. at the time of trial; and fifteen other commercial establishments were situated in the shopping center when the opinion was delivered. See Note 8, 20 L.Ed.2d 611. Neither do we understand that the trespass was such that the picketing obstructed customers entering or leaving the store.

In the case at bar, as we understand it, the correctness of the trial court's findings is not challenged. The court found:

" . . . . that a labor dispute exists between the Complainant, Weinacker's Inc., the employer, and the Respondents, Clifford Taggart, Riley Hobbs, James Stuckey and Retail Clerks Union, Local 458 of Mobile, that the Respondent, Retail Clerks Union, Local 458 of Mobile, of which the other Respondents are members, has been certified by the National Labor Relations Board as a bargaining representative for the employees of the Complainant, that numerous differences have existed and do now exist between the Complainant and parties Respondent over the matter of a collective bargaining agreement between them, and when contract negotiations broke down, the Respondent Union called a strike which is now in progress. Picket lines have been established by the Union on both of the public sidewalks of the City of Mobile immediately adjacent to the public streets and adjoining the real property of the Complainant on which its storebuilding is located and its business is conducted. Complainant, Weinacker's, Inc., conducts a general department store business for the sale of groceries, dry goods, hardware, drugs and prepared foods in a single building, which is set-back from the public street on the east and on the south, which building and premises are under the single ownership of the Complainant. The main entrance to said building fronts on the public street (Government Street) to the south. Across Catherine Street (a public street) to the east, Complainant operates an automobile service station. South of the front of Complainant's storebuilding and between it and the public street, complainant maintains a motor vehicle parking area for the use and convenience of its customers in parking their automobiles while in and about their business with the Complainant, and Complainant also maintains private walkways over its premises leading up to its storebuilding, and sidewalks around its storebuilding. Picketing was first carried on by the Respondents on the public sidewalks of the City of Mobile and later on the sidewalks on the Complainant's premises and in front of the entrances to Complainant's storebuilding. While this picketing on Complainant's premises and in front of the entrances to its building has been without any acts of actual violence or threats of violence to any persons, it has been carried on in such a manner as to obstruct the customers of the Complainant in entering and leaving the entrances to said building on the south or Government Street side thereof. Said picketing in the manner heretofore described continued after the Complainant, through one of its officials, had requested the Respondents not to trespass on Company premises; however, in obedience to the Writ of Temporary Injunction, the Respondents have confined their picketing of Complainant's premises to the public sidewalks of the City of Mobile adjoining the same. This Court's Writ of Temporary Injunction restrained and enjoined the Respondents, their agents, servants, employees and any and all persons acting in concert with them from trespassing upon the real property of the Complainant and from interferring (sic) with its property and the right of ingress and egress thereto."

In support of their contentions, respondents cite the following cases which we here number for reference below: (1) Toomer v. Local No. 995, IBEW, (La.App.), 131 So.2d 248; (2) Barksdale and LeBlanc v. Local No. 130, IBEW, (La.App.), 143 So. 2d 770; (3) Broadcast Service of Mobile, Inc. v. Local 1264, IBEW, 276 Ala. 93, 159 So.2d 452; (4) Maryland v. Williams, 44 LRRM 2357, 37 Labor Cases, ¶ 65,708; (5) Marsh v. State of Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265; (6) Freeman v. Retail Clerks Union, 58 Wash.2d 426, 363 P.2d 803; (7) Schwartz-Torrance Investment Corp. v. Bakery & Confectionery Workers' Union, 61 Cal.2d 766, 40 Cal. Rptr. 233, 394 P.2d 921.

Three elements exist in the instant case to distinguish it from the cited cases; to wit, here, the injunction is sought and

granted so that the trespass is narrowly enjoined;[1] the trespass is on the premises of a single store owner; and the trespass obstructed customers using the entrances to the store. In none of the cited cases is the injunction so narrowly sought or granted.

In (1), the opinion indicated that the only witness testifying as to obstruction of access to the job site said that "his way was not blocked." 131 So.2d at 252. In (2), it appears that there was no obstruction of entrances, and the picketing was not on property owned by or under control of the plaintiffs, and this is the case also in (3). In (4), the picketing was on the walkways of a shopping center which covered 46 acres with over 50 tenants, and picketing did not obstruct entrances. In (5), the activity was on the sidewalk of a company town and no obstruction was involved. In (6), the picketing was in a shopping center in which there were "numerous stores, banks and other enterprises." 363 P.2d 803. Apparently the picketing was on the shopping center street and no entrance was obstructed. In (7), picketing was on sidewalks in a shopping center, and also, so far as appears, without obstruction of entrances.

The court seems to justify the decision in *Logan Valley Plaza* on the conclusion that the shopping center streets had be-

---

1. The petition for immediate relief recites:

### "ONE
"On January 21, 1965 his Honorable Court issued a fiat to the named Respondents ordering the request for an injunction to be set for a hearing at 9:30 Monday, January 25, 1965.

### "TWO
"After receiving this notice actual or constructive, the Respondents [Clifford Taggart & Riley Hobbs (in ink)] have proceeded to constantly trespass upon the Complainant's property by marching or parading back and forth to the immediate doorway of the Complainant's place of business. Your Petitioner alleges that this conduct has been more intensive since the Court entertained the Complainant's petition and set the cause for hearing as described above and that such action on the part of the Respondents are at this time causing an irreparable injury to the Complainant in that the actions of the Respondents constitute obstructing customers from entering and leaving the Complainant's place of business and the Complainant alleges that the acts are outside the realms of peaceful picketing and constitute an immediate invasion of his property and his property rights contrary to the laws of the State of Alabama and the Constitution of the United States of America.

### "THREE
"Your Complainant alleges that it is necessary to receive immediate injunctive relief to enjoin the continuous obstructing of the doorway to the Complainant's shopping center and that the Petitioner has no adequate remedy at law other than the facilities of this Honorable Court by enjoining the Respondents from such acts.

### "FOUR
"Your Complainant respectfully prays that this Honorable Court issue a temporary writ of injunction after requiring the Complainant to enter into a bond with good and sufficient sureties as required by this Honorable Court.

"WHEREFORE, your Petitioner respectfully prays that the allegations of the Petition filed in this Court in this original cause as of January 21, 1965 be adopted and made a part hereof and that this Honorable Court forthwith order the Respondents and agents, servants or employees (and any and all persons acting in concert with (in ink)] from trespassing upon the property of the Complainant and from further interfering with the Complainant's property and right of ingress and egress to the Complainant's property and place of business and grant unto the Complainant all other fit and proper relief that the Complainant might be entitled to and shows unto the Court that an irreparable injury will result unless this Honorable Court grant the relief as so prayed."

The command of the writ of injunction is:

"These, therefore, are to COMMAND AND STRICTLY ENJOIN you, and each of you, from_____TRESPASSING UPON THE PROPERTY OF THE COMPLAINANT AND FROM FURTHER INTERFERING WITH THE COMPLAINANT'S PROPERTY AND RIGHT OF INGRESS AND EGRESS TO THE COMPLAINANT'S PROPERTY AND PLACE OF BUSINESS until the further orders of this Court. And this you will in no wise omit under penalty, &c."

come quasi-public streets and the pickets would be disadvantaged if confined to the public streets outside the Mall. The premises of the instant complainant are not shown to have acquired the character of a town or business block as in *Marsh* and disadvantage to the pickets is not shown. Moreover, obstruction of customers using store entrances is present here but not in the cases cited by respondents.

It would be tempting to dispose of this case by saying that, because no person has suffered bodily assault or injury as a result of the activity here enjoined, the state court has no jurisdiction, but it appears to be our duty to dispose of the case the hard way as the reader of this opinion must have realized by now.

It is true that the evidence does not show that a blow has been struck or any blood shed, and, by some standards, the trespass or picketing may be described, perhaps correctly, as peaceful. The obstruction of a person's use of an entrance to a building by the presence of another person, however, can be accomplished only by using, or threatening to use, physical force in some degree, large or small, depending on the restraint with which the persons involved govern their actions. Such obstruction can easily and quickly escalate into an affray which, even in the loose meaning of today's popular speech, cannot be properly called a peaceful affair.

Aside from the threat of violence which may be provoked by obstructing entrances, two cases support the conclusion that state jurisdiction over the trespass here enjoined has not been ousted. In Moreland Corp. v. Retail Store Employees Union, 16 Wis. 2d 499, 114 N.W.2d 876, decided in 1962, the owner of a shopping center sought an injunction against picketing on a sidewalk in a shopping center. In deciding the issue of jurisdiction, the court said:

" . . . . Even assuming the presence of the necessary federal jurisdictional requirements, the question of whether a state court may enjoin picketing as a trespass, in spite of arguable federal labor law preemption in other respects, has been expressly left open by the United States Supreme Court. Amalgamated Meat Cutters & Butcher Workmen of North America, Local No. 427, A. F. L. v. Fairlawn Meats, Inc. (1957), 353 U.S. 20, 77 S.Ct. 604, 1 L.Ed.2d 613. We conclude that the courts of Wisconsin do have subject-matter jurisdiction to determine a controversy involving an alleged trespass by agents of a labor union.

. . . . .

" . . . . . . . . .

"The issue is whether the respondent, because it has designed its private property for use as a shopping center, has lost its right to ban otherwise lawful picketing. If the record before us clearly established that the property involved is a multi-store shopping center, with sidewalks simulated so as to appear to be public in nature, we would have no difficulty in reaching a conclusion that the property rights of the shopping center owner must yield to the rights of freedom of speech and communication which attend peaceful picketing. See Freeman v. Retail Clerks Union Local No. 1207, supra (concurring opinion). See also, Notes, 1960 Duke L.J., 310; Note, 73 Harv.L.Rev., 1216, and Note, 10 Stanford L.Rev., 694. Compare, Marsh v. State of Alabama (1946), 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265, in which the United States Supreme Court held that the freedom of religion guaranteed by the First and Fourteenth amendments prevented the enforcement of a criminal trespass statute against a person distributing religious pamphlets on the sidewalk of a company-owned town. See also National Labor Relations Board v. Babcock & Wilcox Co. (1956), 351 U.S. 105, 76 S.Ct. 679, 100 L.Ed. 975, a decision under the National Labor Management Relations Act involving the right of labor union representatives to circulate literature in an employer's private parking lot. . . . .

"In weighing the parties' conflicting interests of private property and free speech, we would want to know the physical

characteristics of the shopping center so that our decision on this important policy question could be applied with clarity to other disputes which might arise. On the record before us, the precise nature of the shopping center is not fully disclosed. There are *some* details in the pleadings and in the affidavits; also, the photograph of the store in question is in the record. However, we conclude that the record presents an insufficient basis upon which to enter a summary judgment for the appellants. There being material facts in issue which necessitate a trial, the trial court properly denied the appellants' motion for summary judgment." (16 Wis.2d at pages 503, 505, and 506, 114 N.W.2d at page 878)

*Moreland* is cited by the Supreme Court of the United States in Note 15 of the opinion to support the conclusion of the court in *Logan Valley Plaza.*

In Hood v. Stafford, 213 Tenn. 684, 378 S.W.2d 766, decided in 1964, there was a history of proceedings before the National Labor Relations Board. The opinion recites:

"Prior to the sale of the Weingarten stores, this union had sought to organize the employees of Pic-Pac. As a result of this effort, the National Labor Relations Board held an election on October 4, 1961 for the purpose of determining whether the employees of Pic-Pac desired the union to represent them as bargaining agent. At this election, 19 out of 90 votes cast were in favor of representation by the union. The election was contested and, as far as the record shows, that matter was still pending before the N.L.R.B., at the time of the trial of this case in the Circuit Court.

"It further appears that there are also two other matters which at the time of trial were undisposed of before the N.L.R.B. One pertains to the dismissal on September 16, 1961 by Pic-Pac of two employees, and the other relates to Weingarten and its handling of the sale to Pic-Pac and its discharge of its em-

ployees. Unfair labor practice charges were filed by Pic-Pac with the N.L.R.B., with reference to the activity in question in this case. These charges were dismissed by the Board and no complaint was issued." (378 S.W.2d at pages 767 and 768)

A picket had been arrested and convicted for violating a city ordinance by her picketing which is described as follows:

"The defendant and other pickets were on the parking area of the Pic-Pac Store at Highland and Summer. They were wearing placards, distributing circulars, and soliciting prospective customers, seeking to persuade these members of the public not to trade with Pic-Pac. At times defendant and others walked back and forth in front of the door to the store, which defendant estimated to be 200 to 300 feet from the public sidewalk. At other times defendant was out in the parking area of the parking lot. The prosecutor testified that at times it was necessary for customers to step around the defendant and another picket in order to get in the door to the store. He stated that about one-third of those approaching the door turned away and did not enter the store after being approached by the defendant or another picket. The defendant stated she could not estimate the number of persons who turned around and left the premises as a result of her activities. She was asked to leave the premises before being arrested." (378 S.W.2d at page 768)

The Tennessee Court held that state jurisdiction had not been ousted, saying, among other things:

"Probably the most direct authority dealing with the questions presented in the petition for certiorari is People v. Goduto, 21 Ill.2d 605, 174 N.E.2d 385 (1961), in which the defendants were convicted in the Chicago Municipal Court of criminal trespass. The defendants entered the parking area of a Sears, Roebuck store for the purpose of dis-

tributing union leaflets and questionnaires to employees of the store. The superintendent asked them to leave the premises several times but defendants refused. He then had them arrested. The question of whether or not federal legislation had divested the state courts of power to deal with the activity involved was presented. The Supreme Court of Illinois affirmed the judgment of the Municipal Court. The United States Supreme Court denied certiorari without comment in 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190. The Illinois Court, in that case, recognized that when an activity is protected by section 7, or prohibited by section 8, of the National Labor Relations Act, the state must abstain from regulation and, further, that when the activity is arguably subject to section 7 or section 8 of the Act, the states must yield to the primary jurisdiction of the National Labor Relations Board. The Court then stated:

" 'The defendants have made much of the fact that there was no violence in this case. We believe, however, that this was due to the fact that the company did not resort to self-help to remove defendants from the premises. The defendants were on property occupied by Sears, Roebuck and Company. The company's agent believing the defendants had no right to be on the property ordered them to leave three times. The defendants believing they had a right to be there refused to leave. At this point the company called the police. If the State had not taken charge of the situation, the company would have had no alternative but to forceably remove the defendants. We cannot know the amount of force that would have been necessary to remove them, but the threat of violence in such a situation is imminent. See

e. g., Marshall Field & Co. v. National Labor Relations Board, 7 Cir., 200 F.2d 375.

" ' . . . . . . . . . . . .' " (378 S.W.2d at pages 769 and 770)

■ The activity enjoined in the instant case is neither protected by § 7 nor prohibited by § 8 of the National Labor Relations Act. We are of opinion that it is not reasonably arguable that the Congress intended to exclude the states from jurisdiction over trespass by picketing on privately owned property, which does not have the quasi-public character of a town street or business block, in a manner so as to obstruct entrances to a store.

■ We hold that the trial court in the instant case did not err in deciding that it had jurisdiction.

■ The respondents say, in their second particular, that the court erred in enjoining their union picketing activity because they have a constitutional right to picket peacefully as an exercise of freedom of speech. Without further lengthening this opinion, we hold that the court did not err in this respect because picketing involves something more than free speech, and because the right to picket must be balanced against the right of the owner to use his property in a lawful manner and the interest of the state in restraining trespass which is a potential cause of violence. So far as this record discloses, picketing on the streets abutting complainant's store lot is not materially less effective than picketing on the lot itself.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and KOHN, JJ., concur.