COMMONWEALTH *vs.* STEPHEN H. NOFFKE.

Worcester.    May 16, 1977. — July 8, 1977.

Present: KEVILLE, GOODMAN, & BROWN, JJ.

*Trespass. Jurisdiction,* Federal preemption, Labor. *Federal Question. Labor and Labor Unions.*

The preemption effect of certain sections of the National Labor Relations Act barred State prosecution for criminal trespass of a labor union organizer who was peacefully disseminating information to employees on the employer's property in anticipation of an election ordered by the National Labor Relations Board. [499-505]

COMPLAINT received and sworn to in the First District Court of Southern Worcester on May 25, 1976.

Upon appeal to the Superior Court, questions of law were reported by *Greaney,* J.

*Daniel F. Toomey,* Assistant District Attorney, for the Commonwealth.

*Stephen R. Domesick* for the defendant.

BROWN, J.   The defendant was convicted in a District Court of criminal trespass under G. L. c. 266, § 120, as amended through St. 1974, c. 109. He appealed to the Superior Court for a trial de novo and filed a motion to dismiss the complaint on the ground that the preemptive ef-

fect of certain sections of the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. (1970), causes Massachusetts courts to be without jurisdiction to hear the criminal accusation against him at this time. The defendant also moved to dismiss on the ground that G. L. c. 266, § 120, as applied to his activities, infringes upon his rights of free speech and assembly as guaranteed by the First and Fourteenth Amendments to the United States Constitution and by arts. 16 and 19 of the Massachusetts Declaration of Rights. After a hearing on the motion, a Superior Court judge issued a memorandum of decision in which he concluded that neither the First and Fourteenth Amendments nor arts. 16 and 19 insulated the defendant from prosecution for criminal trespass. The judge ruled, however, that the principles of preemption bar the Massachusetts courts from exercising criminal jurisdiction over the defendant. The order of dismissal was stayed, and the questions set out in the margin[1] have been reported for this court's determination pursuant to G. L. c. 278, § 30A.

We summarize the facts stipulated by the parties and those additional facts found by the Superior Court judge. On December 19, 1975, District 1199 Mass. of the National Union of Hospital and Health Care Employees, RWDSU/AFL-CIO (union), demanded recognition from the Hubbard Regional Hospital (hospital) as exclusive representative of certain of its employees. In March and April, 1976, hearings were held before a hearing officer of the National Labor Relations Board (NLRB) upon a petition for an election filed by the union. The hearings resulted in an order by the NLRB directing an election to determine the

---

[1] The questions reported for our decision are: "(1) Does either Article XVI or Article XIX of the Massachusetts Declaration of Rights prohibit the prosecution for trespass under G. L. c. 266, § 120 of a labor organizer engaged in disseminating information to employees on private property on the facts set out here? (2) Does federal law, namely appropriate sections of the National Labor Relations Act as interpreted by the federal courts, preempt the use of G. L. c. 266, § 120 to prosecute a labor unior organizer engaged in disseminating information to employees on private property for trespass?"

representational desires of the hospital employees. The hospital is a private, voluntary, nonprofit Massachusetts corporation located in two buildings on 10.4 acres of land adjacent to Route 193 in Webster, Massachusetts. At no time relevant to the incidents which form the basis of this case was there a bargaining representative of any of the employees at the hospital.

At approximately 6:30 A.M. on May 25, 1976, two union organizers, the defendant and another, entered onto the paved parking area of the hospital.[2] At a distance of about thirty feet from the entrance to the hospital in a portion of the parking lot known as the "service area" the organizers spoke to an unspecified number of employees as they passed by on their way into the building. The service area was the best place for the defendant to be situated in order to reach the maximum number of employees. There are no patient beds near the service area, and visiting hours at the hospital are from 2:00 to 4:00 P.M. The nearest public area where the defendant could have proselytized in behalf of the union was about six hundred feet from the point where the incident occurred.

At approximately 6:45 A.M. Bernard Gagnon, administrator of the hospital, in the presence of two Webster police department officers, requested the organizers to leave. The defendant refused. The defendant then received an explanation of the trespass law from one of the officers present, again refused to leave upon the officers' request, and was placed under arrest.

The defendant's conduct was found by the trial judge to be "non-violent in all respects." The judge also stated in his memorandum of decision that "the hospital has not made any showing that the objective sought to be accomplished by the union organizer on their property could have been accomplished by alternative means." He added that there was also no "showing that any other method of reaching the employees was available."

---

[2] The first shift of employees, consisting of approximately two hundred people, began working at 6:50 A.M.

Commonwealth *v.* Noffke.

# I

A. The Superior Court judge reported for our decision the question whether certain sections of the NLRA bar the use of G. L. c. 266, § 120, so as to prevent the State from prosecuting for trespass a labor union organizer disseminating information to employees on the employer's private property. In a recent decision the United States Supreme Court held that the doctrine of preemption in the labor law field was shaped by two basic competing interests. *Farmer* v. *United Bhd. of Carpenters, Local 25,* 430 U. S. 290, 295 (1977). The interest in having uniform application of the NLRA argues in favor of preemption of State laws that might conflict with broad Federal legislation. *Id.* However, the fact that Congress has not indicated the extent to which its action preempts State law supports the conclusion that there are some areas in which Congress intended States to be free to act to protect local interests. *Motor Coach Employees* v. *Lockridge,* 403 U. S. 274, 289 (1971). *Farmer* v. *United Bhd. of Carpenters, Local 25,* 430 U. S. at 295-296.

The landmark case which has attempted to strike a balance between these competing interests is *San Diego Bldg. Trades Council* v. *Garmon,* 359 U. S. 236 (1959). *Garmon* held that the preemption doctrine prevents State courts from enforcing a State law against an activity arguably protected by § 7 or prohibited by § 8 of the Act. *Id.* at 245. See Cox, Labor Law Preemption Revisited, 85 Harv. L. Rev. 1337, 1348-1351 (1972). Section 7 of the Act provides, "Employees shall have the right to self-organization, to form, join, or assist labor organizations . . . and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ." 29 U.S.C. § 157 (1970). Section 8 defines activities which constitute unfair labor practices. 29 U.S.C. § 158 (1970), as amended by Act of July 26, 1974, Pub. L. No. 93-360, § 1 (c) - (e), 88 Stat. 395, 396. Mr. Justice Frankfurter, writing for the majority in *Garmon,* stated, "At times it has not been clear whether the particular activity regulated by the States was

governed by § 7 or § 8 or was, perhaps, outside both these sections. But courts are not primary tribunals to adjudicate such issues. It is essential to the administration of the Act that these determinations be left in the first instance to the National Labor Relations Board. . . . When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." 359 U. S. at 244-245. *Motor Coach Employees* v. *Lockridge,* 403 U. S. at 276.

The Commonwealth concedes that the union organizational activity which took place in this case was "arguably subject to" the provisions of § 7 or § 8 of the NLRA. It argues, however, that this case falls within the exception to the *Garmon* doctrine which allows States to exercise jurisdiction over matters deeply rooted in local concern.

B.  The Supreme Court has refused to apply the preemption doctrine to matters which "touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, [it] could not infer that Congress had deprived the States of the power to act." *San Diego Bldg. Trades Council* v. *Garmon,* 359 U. S. at 244. See Broomfield, Preemptive Federal Jurisdiction over Concerted Trespassory Union Activity, 83 Harv. L. Rev. 552, 563-566 (1970). The basic question is whether "there is a realistic threat of interference with the federal regulatory scheme." *Farmer* v. *United Bhd. of Carpenters, Local 25,* 430 U. S. at 305. Where "there is no risk that state damage actions will fetter the exercise of rights protected by the NLRA," the Supreme Court has refused to find preemption. *Id.* at 299. Thus, the Court has refused to hold State law preempted when relief (damages in tort) is sought only with respect to the violent aspect of the defendant's activity. *UAW* v. *Russell,* 356 U. S. 634, 638-639, 645-646 (1958).

Similarly, although the question whether statements made during a union representation campaign contain misrepresentations of material facts which are so serious as to

have an impact on the employee participating in the election has been held by the Supreme Court to be a decision for the Board,[3] where the statements are made with malice and cause injury to an individual, a State libel action is available. *Linn* v. *Plant Guard Workers, Local 114,* 383 U.S. 53 (1966). As the Court observed in *Farmer* v. *United Bhd. of Carpenters, Local 25, supra* at 298-299, its decision in *Linn* identified three factors that justify departure from the *Garmon* rule. First, the underlying conduct in *Linn* is not protected by the Act "and there [is] thus no risk that permitting the state cause of action to proceed [will] result in state regulation of conduct that Congress intended to protect." *Farmer* v. *United Bhd. of Carpenters, Local 25,* 430 U. S. at 298. Second, the Court stated that the interest in protecting residents from malicious libels qualifies as a State interest "deeply rooted in local feeling and responsibility" (*id.*) under *Garmon.* Finally, the Court noted that "there [is] little risk that the state cause of action [will] interfere with the effective administration of national labor policy," (*id.*) since the State court's inquiry into the allegedly defamatory material is of no relevance in any subsequent unfair labor practice determination by the Board. In *Farmer,* the Court concluded that the application of these principles does not oust the State court of jurisdiction to adjudicate a tort action brought by a union member against the union and its officials to recover damages for the intentional infliction of emotional distress. The Court held that "[n]o provision of the National Labor Relations Act protects the 'outrageous conduct' complained of by [the] petitioner . . ."; consequently, "permitting the exercise of state jurisdiction over such complaints does not result in state regulation of federally protected conduct." *Id.* at 302.

The Supreme Court has left open the question whether

---

[3] In *Shopping Kart Food Mkt. Inc.* 228 N.L.R.B. 1311 (1977) (94 L.R.R.M. 1705), the NLRB changed its policy and ruled that it would no longer investigate the truth or falsity of campaign statements of parties in representation elections and that it would not overturn election results on the basis of misleading campaign statements.

the prevention of a peaceful trespass on private property is an interest "so deeply rooted in local feeling and responsibility" that the NLRA does not preempt State jurisdiction. *Meat Cutters Local 427* v. *Fairlawn Meats, Inc.* 353 U. S. 20, 24-25 (1957). The Court has declined to grant certiorari in cases which have presented this issue. *Schwartz-Torrance Inv. Corp.* v. *Bakery & Workers' Local 31,* 61 Cal. 2d 766 (1964), cert. den. 380 U. S. 906 (1965). *Taggart* v. *Weinacker's, Inc.* 283 Ala. 171 (1968), cert. granted, 396 U. S. 813 (1969), cert. dismissed, 397 U. S. 223, 226 (1970).[4]

---

[4] Chief Justice Burger stated in a concurring opinion in *Taggart* that although he agreed with the majority's decision to dismiss the writ of certiorari as having been improvidently granted, he was of the opinion that *Garmon* did not require the Supreme Court to declare that the NLRA preempted State trespass laws, thereby forcing the employer to resort to self-help if he desired redress for illegal trespassory picketing. 397 U. S. at 228.

In a separate opinion, Mr. Justice Harlan in voting to grant certiorari disagreed with the views expressed by the Chief Justice:

"I would have thought this an easy case after *San Diego Building Trades Council* v. *Garmon,* 359 U. S. 236 (1959), wherein the Court concluded, in the broadest terms, that conduct that is either 'arguably protected' or 'arguably prohibited' under the federal labor laws is not subject to regulation by the States. In such cases the Court held that federal law and federal remedies apply to the exclusion of any state rules, and that whether federal law does apply is to be decided in the first instance by the National Labor Relations Board in accordance with the policy of 'primary jurisdiction' established by the National Labor Relations Act. It was concluded that the Board's jurisdiction was preemptive notwithstanding the fact that access to the Board was barred by its refusal to exercise jurisdiction because of failure to meet the dollar-amount requirements.

"The picketing in the case before us occurred, as found by the Alabama trial court, in the context of a labor dispute, and ultimately took place on private sidewalks maintained by respondent in front of entrances to its building. The trial court also found that there was no violence or threat of violence. Thus, notwithstanding my differences with the *Garmon* majority [citation omitted], as to whether States are pre-empted from regulating arguably 'unprotected' activities [citation omitted], I would reverse the decision below since the picketing in this case falls well within the range of what could be considered to be protected under the Act.

"While I recognize the Chief Justice's and Mr. Justice White's concern over the hiatus created when the Board does not or cannot assert its jurisdiction, [citations omitted], that consideration is foreclosed, correctly in my view, by *Garmon.* Congress in the National Labor Relations Act erected a comprehensive regulatory structure and made the Board its chief superintendent in order to assure uniformity of ap-

That question has been resolved by several State courts against Federal preemption. *People* v. *Goduto,* 21 Ill. 2d 605, cert. den. 368 U. S. 927 (1961). *People* v. *Bush,* 39 N.Y. 2d 529 (1976). *Hood* v. *Stafford,* 213 Tenn. 684 (1964). *Moreland Corp.* v. *Retail Store Employees Local 444,* 16 Wis. 2d 499 (1962). The Supreme Court of Washington has concluded that State law regarding private property is displaced until the NLRB decides whether the activity in question is permitted or prohibited by § 7 or § 8 of the Act. *Freeman* v. *Retail Clerks Local 1207,* 58 Wash. 2d 426 (1961). More recently, the California Supreme Court has reached the same result. *Sears, Roebuck & Co.* v. *San Diego Dist. Council of Carpenters,* 17 Cal. 3d 893 (1976). The Supreme Court has granted certiorari in an apparent effort to resolve this conflict. 430 U. S. 905 (1977).[5]

C. The Commonwealth contends that the instant case falls within the recognized exception to the preemption doctrine for matters "deeply rooted in local feeling and responsibility" (*San Diego Bldg. Trades Council* v. *Garmon, supra* at 244) on the ground that the criminal trespass statute "possesses deep roots in local jurisprudence." The Commonwealth further contends that the application of the statute would entail only a limited potential for interference with the Federal regulatory scheme. An examination of the facts of this case reveals that both contentions are without merit.

---

plication by an experienced agency. Where conduct is 'arguably protected,' diversity of decisions by state courts would subvert the uniformity Congress envisioned for the federal regulatory program. In the absence of any further expression from Congress I would stand by *Garmon* and foreclose state action with respect to 'arguably protected activities,' until the Board has acted, even if wrongs may occasionally go partially or wholly unredressed." *Taggart* v. *Weinacker's, Inc.* 397 U. S. at 229-230.

[5] The Commonwealth has cited to us various opinions of the present members of the Court which it believes shed some light on how the Supreme Court will decide *Sears.* We cannot predict how the Supreme Court Justices will answer the question presented for decision in *Sears,* but we must decide it ourselves based upon our view of the current state of the law. See *Sears, Roebuck & Co.* v. *San Diego Dist. Council of Carpenters,* 17 Cal. 3d at 904-905.

First, as the preceding discussion of *Linn* indicates, the fact that a matter is "deeply rooted in local feeling and responsibility" is not the end of the inquiry for purposes of exception to the preemption doctrine; other factors must be considered. On the facts of this case the defendant's activity cannot be easily separated from conduct which is arguably protected by § 7 or prohibited by § 8 of the NLRA as it could be in cases like *UAW* v. *Russell,* 356 U. S. 634 (1958), where there was mass picketing and threats of violence. As a result, we cannot say that there is "no risk that permitting the state . . . [prosecution] to proceed would result in state regulation of conduct that Congress intended to protect." *Farmer* v. *United Bhd. of Carpenters, Local 25, supra* at 298.

In the instant case all that took place was peaceful dissemination of information by two union organizers in anticipation of an election ordered by the NLRB to determine whether certain employees at the hospital wanted to be represented by the union. *NLRB* v. *Babcock & Wilcox Co.* 351 U. S. 105 (1956), involved a very similar fact pattern.[6] The Supreme Court stated in *Babcock* that there are no simple solutions to this type of problem and that accommodation is required between the employer's private property rights and the rights guaranteed to the union organizers under the NLRA. "The employer may not affirmatively interfere with organization; the union may not always insist that the employer aid organization. But when the inaccessibility of employees makes ineffective the reasonable attempts by nonemployees to communicate with them through the usual channels, the right to exclude from property has been required to yield to the extent needed to permit communication of information on the right to organize. The determination of the proper adjustments rests

---

[6] *Babcock* did not directly answer the preemption problem as immediate State involvement was not threatened. The case arose when the employer refused to permit distribution of union literature by nonemployee union organizers in company owned parking lots, and it appeared that the organizers had requested that the NLRB issue a complaint charging the employer with unfair labor practices.

with the Board." *Id.* at 112. *Central Hardware Co.* v. *NLRB,* 407 U. S. 539, 544 (1972). See Come, Federal Preemption of Labor-Management Relations: Current Problems in the Application of *Garmon,* 56 Va. L. Rev. 1435, 1443-1444 (1970). Since the NLRB has not defined the nature of the defendant's activity with "unclouded legal significance,"[7] *San Diego Bldg. Trades Council* v. *Garmon,* 359 U. S. at 246, Massachusetts courts do not have jurisdiction to try the defendant for criminal trespass.

## II

The other question reported for our decision is whether the defendant's activity was protected under the freedom of speech provision of art. 16 and the right of assembly provision of art. 19 of the Massachusetts Declaration of Rights. We need not, however, reach the question whether various provisions of the Massachusetts Declaration of Rights should be construed to prohibit prosecution of the defendant for criminal trespass in the instant case (compare *People* v. *Bush,* 39 N.Y. 2d at 541-542 [Cooke, J., dissenting]) because our disposition of the preemption issue makes the legality of the defendant's activities a proper subject for prior resolution by the NLRB.

---

[7] The Commonwealth states in its brief that, after the defendant's conviction in the District Court but before the Superior Court hearing, the defendant requested the issuance of an unfair labor practice complaint because of the employer's action in pressing the trespass complaint. It appended to its brief a copy of a short letter from the Regional Director in which the Director stated that he was refusing to issue a complaint against the employer. As this decision was not made until after the Superior Court judge's decision, it was not considered below and was not made part of the record. We therefore need not consider it. We note, however, that the Regional Director, while stating in his letter that his investigation had revealed that the union had alternative means of access to the employees available to it, and that the employer did not interfere with rights guaranteed the employees under § 7 of the NLRA, did not specifically state that the organizer's activity was protected or prohibited. See *San Diego Bldg. Trades Council* v. *Garmon,* 359 U. S. at 245-246; Broomfield, Preemptive Federal Jurisdiction over Concerted Trespassory Union Activity, 83 Harv. L. Rev. at 567-568.

# III

We answer the second question reported in the affirmative and express no opinion on the first question reported. The complaint is to be dismissed.

*So ordered.*