Fuchsberg, J.
We are required to decide here whether picketing by union members in front of a store which sold the products of their employer was protected under the First Amendment to the Constitution despite the fact that it took place on private property and, if the picketing was not so protected, whether the jurisdiction of our State courts over conduct which constituted a violation of our criminal trespass statute is pre-empted by Federal labor law.
The defendants are employees of Lorenz Schneider Co., Inc., a company which distributes Wise Potato Chips and several similar products. Each services a route, stocking the assigned shelves of groceries and markets with their products. At the time of the picketing, most of the defendants were members of the Independent Routeman’s Association, a union certified by the National Labor Relations Board (NLRB) as the bargaining agent for Schneider’s routemen.[1] When a labor dispute arose between that company and the union, the defendants decided to picket the stores which sell Wise products obtained from *532 Schneider.[2]
[3]Along with other union members, they established picket lines on four different occasions.
On each occasion, the picketing was carried out in the "cart corral”, an area directly in front of the customer entrance to the target store. That area, an approximately 25-foot-long and 6-foot-wide sidewalk on private property, was fenced off by steel railings designed to prevent customers from taking the store’s shopping carts into the adjoining parking lot. The pickets, who ranged in number from an estimated minimum of 5 persons to a maximum of 13,[8] marched inside the corrals, carrying signs which requested customers not to buy Wise products and chanting "Pass Wise by, don’t buy Wise” or similar words. The chanting was described by witnesses as loud and was apparently audible inside the stores.
There was evidence that the presence of the pickets made entry into and exit from the stores difficult for customers. The managers of the stores made no effort to interfere with the pickets per se, but, in each instance, requested that they move their picketing to the parking lot driveway on the other side of the fence. On the first two occasions, police summoned by the store manager offered to barricade an area there so that the pickets could march in safety only some 6 to 8 feet away from the corral location. On the third occasion, a barricaded area was actually established.[4] However, the pickets refused to utilize it and persisted in picketing within the corral, claiming that they had been legally advised that it was their absolute right to do so on private property.[5] This resulted in their *533 arrest and subsequent conviction of criminal trespass, a violation (Penal Law, § 140.05),[6] each defendant. receiving an unconditional discharge. The Appellate Term upheld the convictions.
Defendants’ assertion of a legal right to picket upon private property is based upon their reading of the United States Supreme Court’s decision in Food Employees v Logan Val. Plaza (391 US 308). It is true that, in that case, the court held that, when a privately owned shopping center takes on so many of the attributes of a town square that it becomes the functional equivalent of a traditional public forum, its owner may no longer claim the full protection accorded to private property and is instead subject to at least some of the requirements which the First Amendment places upon public property (at pp 319-320). In there so holding, the court relied heavily on Marsh v Alabama (326 US 501), a case involving a "company town” wherein the reigning corporate entity and employer owned not only the homes and stores but also the streets and sidewalks for a considerable distance in all directions. But, in a later case, the United States Supreme Court retreated from the broad holding that the modern shopping center was the functional analogue of a company town, leaving Logan Val. apparently limited to labor picketing (Lloyd Corp. v Tanner, 407 US 551). Finally, in a very recent decision, the court has stated that it meant to overrule Logan Val. entirely in the Lloyd case and has left no doubt that, in its view, private property rights supersede First Amendment rights in all cases which fall short of the totality of control exhibited in Marsh (Hudgens v N.L.R.B., 424 US 507).
Whatever may be our own view about the continued applicability of the free speech protections of our own State Constitution to circumstances like that present in Logan Val., particularly in the context of a labor dispute (see Teamsters *534 Union v Hanke, 339 US 470), we do not need to reach that question under the facts presented to us today. Even under a broad reading of the Logan Val. case, it cannot be argued that it sanctioned picketing on just any private property. As already indicated, the property must be such that it can be analogized to the company town or the public forum. The defendants here were not even requested to leave the shopping centers; they were merely asked to leave the property of the individual grocery stores themselves, a very different fact pattern than was confronted in Logan Val.[7]
More important, the defendants were asked to move their lines because of their trespassing conduct, rather than their speech. It has long been established that the conduct aspects of picketing may be regulated by a State even when it takes place upon public property (see Cox v New Hampshire, 312 US 569; Hudgens v N.L.R.B., supra, at p 520; Teamsters Union v Vogt, Inc., 354 US 284; Cameron v Johnson, 390 US 611; Hughes v Superior Ct., 339 US 460; Poulos v New Hampshire, 345 US 395; cf. Kovacs v Cooper, 336 US 77; People v Taub, 37 NY2d 530). A fortiori, the power to do so exists on private property.[8] In short, not even the broadest interpretation of First Amendment protections, as they may apply to private property, would serve to immunize the defendants against the consequences of their refusal to co-operate with a reasonable regulation of their picketing.
*535 In the alternative, the defendants, citing San Diego Unions v Garmon (359 US 236), contend that, even if their conduct was not constitutionally protected, their right to be upon private property of an employer who was at least tangentially related to the dispute[9] is governed by Federal labor law (National Labor Relations Act, US Code, tit 29, § 151 et seq.) and not by the State’s criminal trespass statute.
In Garmon, a State court awarded damages for picketing designed to coerce an employer into recognition of a union against the wishes of his employees. The NLRB had refused to take jurisdiction over the dispute, not even troubling to set out its reasons for declining to do so. The Supreme Court nevertheless held that, because of the overwhelming necessity for uniformity of regulation of economic strife that may arguably come within the ambit of the National Labor Relations Act (NLRA), nothing less than an NLRB ruling squarely deciding that particular conduct is neither protected nor prohibited by Federal law would open the door to State court action. However, neither private property nor the exercise of a State’s police power through the enforcement of a criminal trespass statute was involved in Garmon. Ensuing cases which followed that decision also simply involved State attempts to regulate strictly economic aspects of labor disputes (see, for example, American Radio Assn., v Mobile S. S. Assn., 419 US 215; Connell Co. v Plumbers & Steamfitters, 421 US 616) or conflicts between laws designed to regulate internal union activities and the Federal regulation of relationships between employers and employees (see Motor Coach Employees v Lockridge, 403 US 274; Boilermakers v Hardeman, 401 US 233; Plumbers’ Union v Borden, 373 US 690).
Indeed, two companion cases, decided just prior to Garmon and cited therein (359 US 236, 238), point up the differences between State laws aimed at regulation of precisely the same economic conflict covered by the NLRA and those designed to further legitimate State interest in the protection of private property. One of them, Guss v Utah Labor Bd. (353 US 1), like Garmon, involved a State attempt to refer a dispute over which the NLRB had declined to take jurisdiction to its own labor relations board. It was held pre-empted. The other, Meat *536 Cutters v Fairlawn Meats (353 US 20), involved a State court’s injunction issued against three different union activities: primary picketing, trespass, and secondary picketing, all in violation of State labor law. Though holding that such a unitary injunction was pre-empted, the court noted: "One final point remains to be considered. At two of respondent’s stores, located in suburban shopping centers, the picketing occurred on land owned by or leased to respondent though open to the public for access to the stores. As one of the reasons for finding the picketing unlawful, the Court of Appeals recited this fact, and 'trespassing upon plaintiff’s property’ is one of the activities specifically enjoined. Whether a State may frame and enforce an injunction aimed narrowly at a trespass of this sort is a question that is not here. Here the unitary judgment of the Ohio court was based on the erroneous premise that it had power to reach the union’s conduct in its entirety. Whether its conclusion as to the mere act of trespass would have been the same outside of the context of petitioner’s other conduct we cannot know.” (353 US, at pp 24-25.)
The clear import of this passage is that had the State court ruled only on the trespassing conduct before it, the ruling would not have been pre-empted.
Especially when read against this background, the recent decision in Hudgens v N.L.R.B. (424 US 507, supra), does not leave the field bereft of a method for balancing the rights of unions against private property rights. Unions should not be, and are not, even under the Supreme Court’s interment of the Logan Val. holding, cut off from all access to stores located within private property. The NLRA itself may provide the requisite access if the NLRB finds it justified. So, in Hudgens, the court pointed out that its decision in Lloyd v Tanner (407 US 551, supra), which limited Logan Val., had not been decided in isolation, but along with Central Hardware Co. v N.L.R.B. (407 US 539). Central Hardware is instructive. There a union desiring to organize the employees of a hardware store asserted a right under Logan Val. to use the store’s parking lot, since it was open to the public. The lot served only the one store and was not located in a shopping center. It bore no town square characteristics. Yet, significantly, the court held that the union’s right to enter the private property for the purpose of organizing employees was controlled by Federal labor law doctrine as enunciated in Labor Bd. v *537 Babcock & Wilcox Co. (351 US 105). Babcock had made clear that, in the absence of other reasonable means to communicate, a union may be granted permission by the NLRB to solicit union membership upon an employer’s premises.
As the dissenting opinion in Central Hardware points out:[10] "Babcock is, in another sense, even broader than Logan Valley. It holds that where a union has no other means at its disposal to communicate with employees other than to use the employer’s property, or where the union is denied the access to employees that the employer gives antiunion forces, the union may communicate with employees on the property of the employer. Congress gave unions this right in Section 7 of the NLRA, 61 Stat. 140, 29 U. S. C. § 157.” (407 US, at pp 548-549.)
Interestingly, carefully considered Hudgens expands on Babcock. For its majority and the dissenting Justices both agreed that the NLRB could also extend a privilege similar to that accorded to organizational activities to unions engaged in lawful economic strikes against their employers (see Steelworkers v Labor Bd., 376 US 492; Labor Bd., v Erie Resistor Corp., 373 US 221; Hudgens v N.L.R.B., 424 US 507, supra).
The organizational and other rights guaranteed to employees under section 7 of the NLRA must be balanced against the need to preserve private property rights. "Accommodation between the two must be obtained with as little destruction of one as is consistent with the maintenance of the other.” (351 US 105, at p 112.)
It would appear to follow that union members such as the defendants in our case, providing they have complied with proper procedures, do not necessarily need to be deprived of legitimáte statutory rights by the employment of State trespass law. Under the pre-emption doctrine of Garmon, it is not for us to say whether, had they applied to the NLRB, they could have brought themselves within the limitations set out in Babcock and Hudgens. It is our province, however, to say that they should have ascertained these limits as they applied to the picketing in question here before remaining intransigently on private property.
*538 Neither Babcock nor Garmon authorized a union to decide for itself that the private property of a primary or secondary employer may be invaded with impunity. In Hudgens, for example, the union departed peacefully when asked by the store manager to do so. It then went to the NLRB to obtain an order indicating that it had a right to picket on that particular private property. The litigation was thus unclouded by any forcible confrontations. As the court there indicated, the union has a remedy if the employer should not have threatened to invoke trespass laws; that remedy is the charge of an unfair labor practice against the employer before the NLRB (424 US 507).
Here, however, the union failed to ascertain its rights in advance of its picketing on private property. It insistently continued to do so after being asked by police to move some few feet away from a heavily used entrance. It thus deliberately placed itself in conflict with the exercise of the State’s police powers. Where private property is involved, union rights under section 7 are limited and must be made clear on its initiative in advance.
Moreover, this is not a case where the requests made by the store managers and the police were unreasonable. There was no attempt here to ban picketing as such. While we support to the fullest extent of our powers under our statutes and Constitution the right of unions to communicate with employers and consumers in the pursuit of their legitimate goals, we cannot sanction the wholly unnecessary and unfortunate mistakes in judgment made by the defendants here.
Now briefly directing ourselves to appellants’ other contentions, we point out that it is the recitals in the Appellate Term’s order aflirming the convictions for criminal trespass under section 140.05 of the Penal Law rather than the memorandum opinion which accompanied it that controls (cf. People v Sullivan, 29 NY2d 937), and that the statute itself is not unconstitutional for vagueness (see People v Zevin, 26 NY2d 783).
Accordingly, the order of the Appellate Term must be affirmed.

. Although the union was the certified representative of the defendants at the time of their picketing, that certification has since been voided on the ground that they are independent contractors and not employees subject to the jurisdiction of the NLRB (Schneider Co. v N.L.R.B., 517 F2d 445).

. Consumer picketing by union members is authorized by the National Labor Relations Act (US Code, tit 29, § 151 et seq.), subject to strict limitations on the message which may be communicated and the manner of picketing. In all respects save the blocking of access to the store entrances, this picketing appears to have been within the limits of allowable conduct.

. Those union members who left the cart corral after police requested them to do so were not arrested.

. These three occasions of picketing all took place at the Finast market in the Green Acres Shopping Center in Valley Stream. On the fourth occasion of picketing, which took place at the Foodtown market in Bethpage, the pickets were apparently offered only the public sidewalk along the Hempstead Highway as an alternative. The store itself is located on that highway and, while the record is vague at best as to the distance between the store and the highway and the extent to which a picket line there might have affected other near-by businesses, if any, no specific challenge to the suggested sidewalk location based on its distance from the cart corral has been made. The little information supplied in the record seems to indicate that the sidewalk offered is not an unreasonable distance away from the store.

. According to the record, counsel employed by the union was present at some of the picketing incidents.

. Penal Law (§ 140.05) states that "A person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises.” Penal Law (§ 140.00, subd 5) defines "Enter or remain unlawfully” as: "A person 'enters or remains unlawfully’ in or upon premises when he is not licensed or privileged to do so. A person who, regardless of his intent, enters or remains in or upon premises which are at times open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person.” It is conceded here that, if defendants’ conduct was not protected by the First Amendment or applicable Federal labor law, then it was a violation of the criminal trespass statute.

. It appears from the record before us that the grocery, not the owner of the shopping center, had dominion and control over the cart corral areas even though these were but fenced-off portions of the sidewalks. The parties submitted the leases of the two groceries to the trial" court as evidence of this control. Since their position before the courts has consistently been one of insisting that the right to enter private property to picket either was or was not applicable to all private property, without regard for the public forum aspects of the Logan Val. case and the distinctions it made, the parties considered the leases too unimportant to submit to us on this appeal and stipulated them out of the record presented here. We will, therefore, proceed on their assumption that the corral areas were the property of the groceries. As we shall indicate, nothing turns on the distinction now, in light of the recent Supreme Court ruling in this area (Hudgens v N.L.R.B., 424 US 507).

. In the Logan Val. (391 US 308) case, the majority, in reviewing the courts’ earlier cases, drew a distinction between a State court’s right to find picketing illegal under State law because of the purpose to which it was directed and its right to find that picketing constituted a trespass because it was unauthorized by the owners of private property. It categorized the former as pre-empted and, absent overriding First Amendment privilege, the latter as permissible (391 US 308, 314-315). While the finding of such a privilege in Logan Val. now appears to be overruled by Hudgens v N.L.R.B. (supra), we find nothing in Hudgens which would invalidate the Logan Val. court’s analysis of its own past cases.

. Although the groceries were not the employers of these defendants they are "employers” within the definition of the NLRA (US Code, tit 29, § 152, subds [2], [3]) and their rights vis-á-vis secondary activity by unions are governed at least in part by the provisions of that statute. (See Hudgens v N.L.R.B., 424 US 507, 510, n 3.)

. The dissenting Justices in the Central Hardware case differed from the majority on the question of whether the constitutional issue should have been reached; they did not disagree on the interpretation of Babcock itself (Central Hardware Co. v N.L.R.B., 407 US 539, 548-549, supra).