[L.A. No. 30562. Sept. 2, 1976.]

SEARS, ROEBUCK & COMPANY, Plaintiff and Respondent, v.
SAN DIEGO COUNTY DISTRICT COUNCIL OF CARPENTERS,
Defendant and Appellant.

COUNSEL

Brundage, Williams & Zellman, Jerry J. Williams and John S. Adler for Defendant and Appellant.

McCarthy, Johnson & Miller, P. H. McCarthy, Jr., and William R. Shepard as Amici Curiae on behalf of Defendant and Appellant.

Gray, Cary, Ames & Frye and David B. Geerdes for Plaintiff and Respondent.

Adrian A. Kragen, Lawrence M. Cohen, Jeffrey S. Goldman, Meredith K. Wellington and Lederer, Fox & Grove as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**SULLIVAN, J.**—Defendant San Diego County District Council of Carpenters (Union) appeals from an order granting a preliminary injunction restraining defendant, its officers, agents, representatives and members from picketing on the property of plaintiff Sears, Roebuck & Company (Sears), but permitting them to picket on the public sidewalks adjacent to Sears' private property.

Sears operates a retail department store on property which it owns in Chula Vista, San Diego County. The store building itself is centered on the large, rectangular-shaped piece of land. Walkways abut on the building on all four sides; these in turn are surrounded by a large parking area. All of the walkways and the entire parking area are located on Sears property which on its external limits is bounded on three sides by public sidewalks and streets, and on the fourth by private residences separated from the store property by a concrete wall. Sears' store is the only building on the premises.

Defendant Union is a labor organization created for the purpose of negotiating terms and conditions of employment on behalf of certain employees in the carpentry trades.

In October 1973, the Union was informed by one of its members that Sears was having carpentry work done in its Chula Vista store. On October 24 two business representatives of the Union visited the store and determined that platforms and other wooden structures were being built by carpenters who had not been dispatched from the Union's hiring hall, that the work was covered by the master agreement between the Union and the Building Trades Council of San Diego County and that the men engaged in it came within the classification of journeyman carpenters. Later the same day representatives of the Union met with Sears' store manager and requested that Sears either contract the work through a building trades contractor who would use dispatched carpenters, or in the alternative, sign a short form agreement obligating Sears to abide by the terms of the Union's master labor agreement with respect to the dispatch and use of carpenters on the job. The manager indicated that he would consider the matter, but despite repeated inquiries by the Union, he never responded.

On the morning of October 26, the Union established picket lines on plaintiff's property. Pickets patrolled on the parking lot areas immediately adjacent to the walkways abutting the sides of the building. They carried signs indicating that they were AFL-CIO pickets sanctioned by the "Carpenters' Trade Union." It is not disputed that at all times while they were on Sears' property the pickets conducted themselves in a peaceful and orderly fashion. The record discloses no acts of violence, threats of violence, or obstruction of traffic. The security manager of the store requested that the pickets be removed from Sears' private property, but the Union's business representative refused, stating that the pickets would not leave unless compelled to do so by legal action.

On October 29, Sears obtained a temporary restraining order enjoining the Union, its agents, representatives and members from picketing on Sears' property. The Union complied by removing its pickets to the public sidewalks adjacent to, but outside of, the property. Sears claimed that while Union was picketing on the public sidewalks, certain deliverymen and repairmen refused to cross the picket-lines to service the Sears store. The Union, on the other hand, asserted that its pickets on the public sidewalks were ineffective because they were too far away from the store. As a result, on November 12, 1973, the Union removed its pickets allegedly because of their ineffectiveness. The pickets never returned.

On November 21, 1973, the superior court granted a preliminary injunction restraining the Union, its officers, agents, representatives and members from "causing, instigating, furthering, participating in, or carrying on picketing on the plaintiff's property . . . ." The court expressly declared, however, that "this order and preliminary injunction shall not apply to the public sidewalks on 5th Avenue, 'H' Street and 'I' Street which are adjacent to the private property of plaintiff." This appeal followed.

■ Although the Union launches several related attacks on the trial court's injunction, essentially its main contention is that the court did not have the subject matter jurisdiction of the underlying labor dispute and thus was devoid of all judicial power to enjoin the picketing. We are satisfied that this contention has merit. We shall point out that federal law preempts both state and federal court jurisdiction of the controversy at hand, that such law confers exclusive jurisdiction on the National Labor Relations Board (Board) and that to such rule of preemption there

is no exception permitting state courts to exercise jurisdiction over peaceful labor activity merely because it involves trespass on private property. Accordingly we reverse the order granting the injunction.

As we have already had occasion to explain in detail (see *Musicians Union, Local No. 6* v. *Superior Court* (1968) 69 Cal.2d 695 [73 Cal.Rptr. 201, 447 P.2d 313]) the Labor Management Relations Act (Act), whose purpose is "to promote the full flow of commerce . . . and to protect the rights of the public in connection with labor disputes affecting commerce," (29 U.S.C.A. § 141) empowers the Board "to prevent any person from engaging in any unfair labor practice . . . affecting commerce." (29 U.S.C.A. § 160 (a).) "The term 'labor dispute' includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee." (29 U.S.C.A. § 152 (9).) "The term 'commerce' means trade, traffic, commerce, transportation, or communication among the several States . . . ." (29 U.S.C.A. § 152 (6).) "The term 'affecting commerce' means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." (29 U.S.C.A. § 152 (7).) In the matter before us, we observe that the parties do not call into question the fact that the underlying controversy is a labor dispute "affecting commerce" and thus within the compass of the foregoing statutory definitions establishing the jurisdiction of the Board. Nor does Sears contend that the Board in its discretion would decline to assert jurisdiction over the dispute and that as a result the superior court had jurisdiction pursuant to the provisions of section 14 (c) of the Act. (29 U.S.C.A. § 164 (c).)[1]

[1]Defendant Union, relying upon our decision in *Russell* v. *Electrical Workers Local 569* (1966) 64 Cal.2d 22 [48 Cal.Rptr. 702, 409 P.2d 926], argues that Sears' failure to demonstrate that the Board would decline to assert jurisdiction over this dispute precludes the assumption of jurisdiction by the superior court. The Union misconstrues *Russell.* Under that decision, the party seeking relief in the superior court bears the burden of establishing the Board's refusal to assert jurisdiction only in those instances where it is claimed that the state court has jurisdiction pursuant to the grant of residual jurisdiction in section 14 (c) of the Act. As will be explained, *infra,* Sears contends that notwithstanding the Board's jurisdiction, the superior court had jurisdiction to issue its injunction by virtue of a judicially created exception to the rule of preemption; Sears does not claim the benefit of the statutory exception in section 14 (c).

Having satisfied ourselves that Sears was a statutory employer subject to the Act, we turn to consider the two sections having a crucial impact on the jurisdictional issue before us.

Section 7 of the Act provides that "Employees shall have the right . . . to engage in . . . concerted activities for the purpose of . . . mutual aid or protection . . . ." (29 U.S.C.A. § 157.) Section 8 defines activities which constitute unfair labor practices. (29 U.S.C.A. § 158.) It is now settled law that "When an activity is arguably subject to [section] 7 or [section] 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the [Board] if the danger of state interference with national policy is to be averted." (*San Diego Unions* v. *Garmon* (1959) 359 U.S. 236, 245 [3 L.Ed.2d 775, 783, 79 S.Ct. 773]; see *Musicians Union, Local No. 6* v. *Superior Court, supra,* 69 Cal.2d 695, 706.) *Garmon* "established the general principle that the [Act] pre-empts state and federal court jurisdiction to remedy conduct that is arguably protected or prohibited by the Act." (*Motor Coach Employees* v. *Lockridge* (1971) 403 U.S. 274, 276 [29 L.Ed.2d 473, 477, 91 S.Ct. 1909].) We therefore proceed to determine whether the activities enjoined in the instant case are "arguably" protected by section 7 or "arguably" prohibited by section 8 of the Act.[2]

As the uncontradicted facts before us disclose, the Union, prior to instituting picketing, requested that Sears contract its work through a building trades contractor who would employ carpenters dispatched from Union's hiring hall or, in the alternative, sign an agreement with the Union by which Sears would be bound to hire through the Union's hiring hall at prevailing wage scales. These facts indicate that one of the Union's purposes in picketing the Sears store was to secure work for the Union's members. We have heretofore recognized that a labor union "seeking to broaden the employment opportunities for its members . . . pursue[s] an objective that section 7 'arguably' protects as an activity for the employees' 'mutual aid or protection.' . . . [¶] Moreover, picketing for employees' 'mutual aid or protection' is a classic form of 'concerted activities' within the meaning of section 7." (*Musicians Union, Local No.*

[2]In so doing, we are mindful of our earlier views to the effect that the adverb "arguably" as used in the above excerpt from *Garmon* means "susceptible of reasonable" argument. (See *Grunwald-Marx, Inc.* v. *L. A. Joint Board* (1959) 52 Cal.2d 568, 584 [343 P.2d 23]; see also *Musicians Union, Local No. 6* v. *Superior Court, supra,* 69 Cal.2d 695, 706, fn. 6.)

6 v. *Superior Court, supra,* 69 Cal.2d 695, 707.) The record also reflects that the picketing was for the purpose of publicizing Sears' undercutting of prevailing standards for the employment of carpenters. In this additional respect, then, the Union's "peaceful primary picketing to protest wage rates below established area standards arguably constituted protected activity under [section] 7." (*Longshoremen* v. *Ariadne Co.* (1970) 397 U.S. 195, 200-201 [25 L.Ed.2d 218, 222, 90 S.Ct. 872].)

These picketing activities of the Union were not disqualified for arguable protection under section 7 merely because they were engaged in upon Sears' private property and, being without Sears' permission or approval, were consequently of a trespassory nature. In *Labor Board* v. *Babcock & Wilcox Co.* (1956) 351 U.S. 105 [100 L.Ed. 975, 76 S.Ct. 679], and *Central Hardware Co.* v. *NLRB* (1972) 407 U.S. 539 [33 L.Ed.2d 122, 92 S.Ct. 2238], the Supreme Court established that in certain circumstances nonemployee union representatives have a right protected under section 7 to enter the employer's premises. Undeniably this right is not all encompassing. A determination of its scope requires an "[a]ccommodation between [section 7 rights and private property rights] with as little destruction of one as is consistent with the maintenance of the other." (*Labor Board* v. *Babcock & Wilcox Co., supra,* 351 U.S. at p. 112 [100 L.Ed. at pp. 982-983].) "The locus of that accommodation, however, may fall at differing points along the spectrum depending on the nature and strength of the respective § 7 rights and private property rights asserted in any given context." (*Hudgens* v. *NLRB* (1976) 424 U.S. 507, 522 [47 L.Ed.2d 196, 208-209, 96 S.Ct. 1029].) Under the *Garmon* rule, so long as it can be argued that trespassory union activity is protected under section 7, it is initially within the exclusive competence of the Board to reconcile these section 7 rights with private property rights; state court jurisdiction is displaced. (See Cox, *Labor Law Preemption Revisited* (1972) 85 Harv.L.Rev. 1337, 1360-1361; Broomfield, *Preemptive Federal Jurisdiction Over Concerted Trespassory Union Activity* (1970) 83 Harv.L. Rev. 552, 562-563.)[3]

---

[3]The necessity for the NLRB to be the arbiter of whether concerted trespassory union activity is protected by section 7 was cogently explained by an assistant general counsel of the Board: "This is an area that clearly calls for the exercise of the Board's expertise and experience, requiring it to consider and weigh such factors as whether employees or outside organizers are involved; if the latter, the extent to which the property has been opened up to outsiders for purposes other than union organization; and the feasibility of utilizing other avenues of communication. To permit the state courts to make determinations of this delicate nature is likely to result in the state court finding unprotected, and then enjoining, activity that the Board would find was protected by section 7 of the [Act]. To invite such conflicts with respect to 'conduct so plainly within

We also consider it "arguable" that the Union's activities constituted recognitional picketing subject to the provisions of section 8 (b)(7)(C) of the Act: "(b) It shall be an unfair labor practice for a labor organization or its agents . . . (7) to picket or cause to be picketed . . . any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees . . . unless such labor organization is currently certified as the representative of such employees: . . . (C) where such picketing has been conducted without a petition under section 159(c) of this title being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing; . . . *Provided further,* That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services." (29 U.S.C.A. § 158 (b) (7) (C).)

The request by Union's business representative that Sears sign a short form agreement arguably indicates that a recognitional purpose underlay the picketing and belies a claim that the picketing was not subject to section 8 (b)(7)(C) because it was solely for the purpose of publicizing that Sears was undercutting prevailing wage rates for the employment of carpenters. (See *Yuba, Sutter & Colusa Counties Bldg. & Construction Trades Council* (1971) 189 N.L.R.B. 450 [77 L.R.R.M. 1185]; *Building & Construction Trades Council of Philadelphia* (1964) 149 N.L.R.B. 1629 [58 L.R.R.M. 1001]; *Plasterers' & Cement Masons' Local 44* (1963) 144 N.L.R.B. 1298 [54 L.R.R.M. 1237]; *Painters Union, Local 130* (1962) 135 N.L.R.B. 876 [49 L.R.R.M. 1592]; see also generally Morris, The Developing Labor Law (1971) pp. 564-566, 568-573.) This recognitional objective brought Union's picketing within the ambit of the 30-day limitation in section 8 (b)(7)(C) notwithstanding the facts that Sears had no employees whom Union sought to represent and that therefore a petition for representation election under section 9(c) would have been futile. (*Samoff* v. *Building & Construction Council of Delaware* (D. Del.

the central aims of federal regulation' can only result in impairing Congress' intention to obtain a uniform national labor policy." (Come, *Federal Preemption of Labor-Management Relations: Current Problems in the Application of Garmon* (1970) 56 Va.L.Rev. 1435, 1443-1444; fns. omitted.)

1974) 378 F.Supp. 261, 267; *Local 542, Int'l Union of Oper. Engineers* (1963) 142 N.L.R.B. 1132 [53 L.R.R.M. 1205], enforced *sub nom. NLRB v. Local 542, Int'l Union of Oper. Engineers* (3d Cir. 1964) 331 F.2d 99, cert. den. 379 U.S. 889 [13 L.Ed.2d 93, 85 S.Ct. 161].) As the Board declared in *Local 542*: "The primary purpose of Section 8 (b) (7) is to limit the impact of recognitional or organizational picketing upon an employer or his employees, so that questions of representation may be settled by orderly processes and in accord with the free choice of employees. In our view, a holding here that a union can picket indefinitely to force an employer to sign a *prehire* contract would run contrary to the purposes of the section." (142 N.L.R.B. 1132; italics in original.) The Union was arguably not entitled to the benefit of the informational picketing proviso since it appears that the picketing had the effect of inducing "individual[s] employed by . . . other person[s] in the course of [their] employment, not to pick up, deliver or transport any goods or not to perform any services." (29 U.S.C.A. § 158 (b)(7)(C).)

Thus, had the picketing continued for 30 days without a petition for a representation election having been filed, Union would have arguably violated section 8 (b)(7)(C). In addition to its remedy of bringing an unfair labor practice charge before the Board, Sears might also have been entitled to injunctive relief from a United States district court pursuant to section 10(*l*) of the Act. (29 U.S.C.A. § 160 (*l*); see *Samoff* v. *Building & Construction Council of Delaware, supra,* 378 F.Supp. 261, 265-266.)

In sum, our determination that the activities at issue herein are both arguably protected by section 7 and arguably prohibited by section 8 establishes a case for federal preemption. The Supreme Court has recognized, however, certain exceptions to the *Garmon* rule: "[D]ue regard for the presuppositions of our embracing federal system, including the principle of diffusion of power not as a matter of doctrinaire localism but as a promoter of democracy, has required us not to find withdrawal from the States of power to regulate where the activity regulated was a merely peripheral concern of the Labor Management Relations Act. See *International Assn. of Machinists* v. *Gonzales* [1958] 356 U.S. 617. Or where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had

deprived the States of the power to act.[2]" (*San Diego Unions* v. *Garmon, supra,* 359 U.S. 236, 243-244 [3 L.Ed.2d 775, 782].)[4] Sears contends that the protection of private property from trespass is an interest "so deeply rooted in local feeling and responsibility" that the states may enjoin peaceful primary labor picketing.

The Supreme Court left open this question in *Meat Cutters* v. *Fairlawn Meats* (1957) 353 U.S. 20 [1 L.Ed.2d 613, 77 S.Ct. 604],[5] and despite

"[2]*United Automobile Workers* v. *Russell* [1958] 356 U.S. 634; *Youngdahl* v. *Rainfair* [1957] 355 U.S. 131; *Auto Workers* v. *Wisconsin Board* [1956] 351 U.S. 266; *United Construction Workers* v. *Laburnum Corp.* [1954] 347 U.S. 656."

[4]In addition to the two judicial exceptions to preemption suggested in *Garmon* for matters of "peripheral concern" of the Act or for interests "deeply rooted in local feeling and responsibility," there are statutory exceptions permitting a state court to exercise jurisdiction over activities arguably subject to section 7 or section 8 of the Act. We have referred above to section 14(c) of the Act (see fn. 1, *ante,* and accompanying text) which permits state courts to assume and assert jurisdiction over labor disputes where the NLRB has declined to assert jurisdiction by rule of decision or published rule because, in its opinion, "the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction . . . ." (29 U.S.C.A. § 164(c).) In addition, under section 301(a) of the Act (29 U.S.C.A. § 185(a)) "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . or between any such labor organizations, may be brought in any district court of the United States . . . ." State courts have concurrent jurisdiction with the federal courts over suits brought under section 301(a). (*Dowd Box Co.* v. *Courtney* (1962) 368 U.S. 502 [7 L.Ed.2d 483, 82 S.Ct. 519].) Furthermore, a state court is not deprived of its jurisdiction over such a suit by the fact that the conduct complained of would constitute an unfair labor practice within the jurisdiction of the NLRB. (*Smith* v. *Evening News Assn.* (1962) 371 U.S. 195 [9 L.Ed.2d 246, 83 S.Ct. 267]; *Consolidated Theatres, Inc.* v. *Theatrical Stage Employees Union* (1968) 69 Cal.2d 713, 722 [73 Cal.Rptr. 213, 447 P.2d 325].) Sears has not claimed that either of these statutory exceptions to NLRB preemption are applicable to the instant controversy.

[5]We disagree with Sears' suggestion in its citation to this court of a recent decision of the New York Court of Appeals that the Supreme Court in *Fairlawn Meats* indicated that an injunction directed narrowly at trespassory conduct would not be preempted. (See *People* v. *Bush* (1976) 39 N.Y.2d 529 [384 N.Y.S.2d 733, 349 N.E.2d 832].) In *Fairlawn Meats* the Supreme Court overturned a state court injunction which prohibited various types of picketing for the purpose of compelling an employer to enter into a union-shop agreement. The Court determined that such picketing was "arguably" prohibited by section 8 (b)(2), and state jurisdiction to regulate such conduct was therefore preempted. One of the types of activity prohibited by the state injunction was trespassing upon the plaintiff's property. In that regard, the Supreme Court stated: "Whether a State may frame and enforce an injunction aimed narrowly at a trespass of this sort is a question that is not here. Here the unitary judgment of the Ohio court was based on the erroneous premise that it had power to reach the union's conduct in its entirety. Whether its conclusion as to the mere act of trespass would have been the same outside of the context of petitioner's other conduct we cannot know." (353 U.S. at pp. 24-25 [1 L.Ed.2d at p. 616].) We have previously construed this language as leaving open the question which we decide today. (*Musicians Union, Local No. 6* v. *Superior Court, supra,* 69 Cal.2d 695, 711.)

several opportunities (see *Schwartz-Torrance Investment Corp. v. Bakery & Confectionery Workers' Union* (1964) 61 Cal.2d 766 [40 Cal.Rptr. 233, 394 P.2d 921], cert. den. (1965) 380 U.S. 906 [13 L.Ed.2d 794, 85 S.Ct. 888]; *Taggart* v. *Weinacker's Inc.* (1968) 283 Ala. 171 [214 So.2d 913], cert. granted (1969) 396 U.S. 813 [24 L.Ed.2d 65, 90 S.Ct. 52], cert. dism. (1970) 397 U.S. 223 [25 L.Ed.2d 240, 90 S.Ct. 876]) has not yet explicitly answered it. This court, on the other hand, squarely confronted the issue in *Musicians Union, Local No. 6* v. *Superior Court, supra,* 69 Cal.2d 695. In the action underlying that proceeding for a writ of prohibition, the respondent superior court had enjoined the Musicians Union and others from picketing at the entrances to, or on any property of, the Oakland-Alameda County Coliseum Complex. The union was involved in a dispute with Charles O. Finley & Company, Inc., owner of the Oakland Athletics baseball team, over the number and type of musicians who would play at Athletics' home games. We held that the superior court was without jurisdiction to enjoin the union's "arguably" protected or prohibited activities. Noting that "a blanket application of the states' trespass laws to prohibit [peaceful picketing that the Act regulates] 'would tend to frustrate uniform application of federal labor legislation,' " (*id.,* at p. 711; citations omitted) we rejected the contention that the court had jurisdiction to enjoin the union from trespassing upon the Coliseum property in the absence of some danger to public health or safety.

It is argued that our decision in *Musicians Union* should be distinguished from the instant case on the basis that in the former the superior court enjoined all picketing wherever it might occur, while the injunction in this case prohibits only picketing upon Sears' private property. This argument clearly lacks merit. As indicated, we held in *Musicians Union* that the superior court was without jurisdiction to enjoin activities, both trespassory and nontrespassory, which were arguably protected or prohibited by the Act.

We recognized in *Musicians Union* that "[t]here may be circumstances in which the use of trespass laws in labor controversies would reach activities that would have 'no relevance to the Board's function,' and the state's power to enjoin them 'would not interfere with the Board's jurisdiction over the merits of the labor controversy.' " (69 Cal.2d 695, 712, quoting from *Linn* v. *Plant Guard Workers* (1966) 383 U.S. 53, 63-64 [15 L.Ed.2d 582, 590-591, 86 S.Ct. 657].) We also acknowledged that despite the *Garmon* rule, power was reserved to the states to prevent

mass picketing, violence, threats of violence and obstructions to ingress and egress which threatened public health and safety. (69 Cal.2d at p. 710.) In fact, the cases cited by the Supreme Court in support of its statement in *Garmon* that the states may regulate conduct which touches interests "deeply rooted in local feeling and responsibility" involved instances of mass picketing and threats of violence. (See text accompanying fn. 4, *ante,* and cases cited therein.) Nonetheless, the injunction issued in *Musicians Union* "relie[d] upon the law of trespass not to ensure public safety and order, but to institute ground rules governing the economic struggle between the union and [the employer]. It [did] not prohibit trespassing in specified times and places to guarantee the orderly exhibition of the game. Thus the injunction protect[ed] not the public welfare, but the private right of [the property owner] to post its property against any designated entrant thereon. It is for the Board, however, to determine whether and how to protect a party against activities that the Act 'arguably' protects or prohibits." (69 Cal.2d at p. 712.) Similarly, the instant case involves no public health or safety consideration which would bring it within the heretofore recognized exceptions to federal preemption.

Notwithstanding our definitive holding in *Musicians Union* that labor picketing arguably subject to sections 7 or 8 of the Act may not be enjoined by our courts merely for the reason that it constitutes a trespass on private property, Sears urges that we should be persuaded to the contrary by the concurring opinion of Chief Justice Burger in the subsequent case of *Taggart* v. *Weinacker's Inc., supra,* 283 Ala. 171, certiorari granted 396 U.S. 813, certiorari dismissed 397 U.S. 223, 227 [25 L.Ed.2d 240, 243] (Burger, C. J., conc.). In *Taggart* the Supreme Court dismissed its writ of certiorari as improvidently granted[6] after the Supreme Court of Alabama had held that its courts have jurisdiction to enjoin peaceful picketing on private property. While concurring in the court's dismissal, Chief Justice Burger expressed his view that the states are not preempted from enjoining trespassory peaceful picketing. He stated that "[t]he protection of private property . . . through trespass laws is historically a concern of state law" (*id.,* at p. 227 [25 L.Ed.2d at p. 243])

---

[6]In its per curiam opinion, the court indicated that its dismissal was based on several factors. First, it appeared that only "a bare remnant of the original controversy" remained. Second, the record disclosed that the private sidewalk upon which picketing had occurred was narrow and the Alabama court had found obstructions to customers. The obscurity of the record on these latter issues rendered the case an inappropriate vehicle for deciding the First Amendment questions raised therein.

and suggested that trespassory conduct touches interests "deeply rooted in local feeling and responsibility." In reaching this conclusion, Chief Justice Burger was particularly concerned with the hiatus in the law resulting from federal preemption where trespassory conduct is not prohibited by section 8 and is only "arguably" protected by section 7. In such instance the landowner has no remedy except to provoke the union into bringing unfair labor practice charges before the Board in order to obtain a determination whether the activity is actually protected. In Chief Justice Burger's view, "[n]othing in [*Garmon*] would warrant this Court to declare state-law trespass remedies to be ineffective and thus to remit a person to his own self-help resources if he desires redress for illegal trespassory picketing." (*Id.*, at p. 228 [25 L.Ed.2d at p. 243].)

Nevertheless, in this area of federal preemption we are bound to follow the Supreme Court's most recent ruling. As we have indicated, the holding in *Garmon* precludes state court jurisdiction over the labor dispute now before us. Notwithstanding the views of individual members of the high court, the fact remains that the court itself, speaking through a majority of its members, has not to this date created a judicial exception to its *Garmon* ruling so as to except from it and thus withdraw from the exclusive jurisdiction of the Board those peaceful activities —like the activities now engaging our attention—which, although arguably subject to section 7 or section 8 of the Act, are nevertheless trespassory in nature. Furthermore, we continue to believe that "[u]nlike the power to prevent violence and public disorder, the power to prohibit peaceful picketing that trespasses on the premises of employers involved in labor disputes would 'leave the States free to regulate conduct so plainly within the central aim of federal regulation . . . .'" (*Musicians Union, Local No. 6* v. *Superior Court, supra,* 69 Cal.2d at p. 711; citation omitted.) We say this mindful of the concern on the part of some members of the high court for the legal hiatus created by federal preemption where trespassory activity is merely "arguably" protected by section 7. In the case at bench, however, such a situation would have existed for a period of 30 days at most. At the end of that time, if the Union had not filed a petition for a representation election, it arguably would have been in violation of section 8 (b)(7)(C) and Sears would have been entitled to the remedies discussed above.

Moreover, while the overbreadth of the "arguably protected" standard of preemption may on occasion deprive the landowner of a remedy for an actionable wrong, such incidents merely provide a basis for criticism

of the *Garmon* rule itself.[7] (See Cox, *Labor Law Preemption Revisited,* *supra,* 85 Harv.L.Rev. 1337, 1360-1367.) But the rule remains in effect and we are not free to declare that it is inoperative in the instant case. We therefore conclude that *Garmon* properly controls this case for the reasons set forth by Justice Harlan in his separate memorandum in *Taggart* v. *Weinacker's Inc., supra,* 397 U.S. 223, in which he responded to Chief Justice Burger: "While I recognize The Chief Justice's and Mr. Justice White's concern over the hiatus created when the Board does not or cannot assert its jurisdiction . . . that consideration is foreclosed, correctly in my view, by *Garmon.* Congress in the National Labor Relations Act erected a comprehensive regulatory structure and made the Board its chief superintendent in order to assure uniformity of application by an experienced agency. Where conduct is 'arguably protected,' diversity of decisions by state courts would subvert the uniformity Congress envisioned for the federal regulatory program. In the absence of any further expression from Congress I would stand by *Garmon* and foreclose state action with respect to 'arguably protected activities,' until the Board had acted, even if wrongs may occasionally go partially or wholly unredressed." (*Id.,* at p. 230 [25 L.Ed.2d at pp. 244-245]; citations omitted.)

Accordingly, we reaffirm our decision in *Musicians Union* and hold that the Union's trespass upon Sears' property did not justify the assumption of jurisdiction by the superior court to enjoin peaceful picketing "arguably" protected and prohibited by federal law.[8] The

[7]Mr. Justice White has on at least two occasions expressed a concern for the hiatus resulting from federal preemption of activities merely "arguably protected." (See *Longshoremen* v. *Ariadne Co., supra,* 397 U.S. 195, 201-202 [25 L.Ed.2d 218, 222-223] (White, J. conc.); *Motor Coach Employees* v. *Lockridge, supra,* 403 U.S. 274, 325-332 [29 L.Ed.2d 473, 505-509] (White, J. dis.).) He advocates, however, not the creation of new exceptions to the *Garmon* rule, but a retreat from the doctrine itself. He "would hold that only labor activity determined to be actually, rather than arguably, protected under federal law should be immune from state judicial control." (*Longshoremen, supra,* at p. 202 [25 L.Ed.2d at p. 223].) He "would permit the state court to entertain the action and if the union defends on the ground that its conduct is protected by federal law, to pass on that claim at the outset of the proceeding. If the federal law immunizes the challenged union action, the case is terminated; but if not, the case is adjudicated under state law." (*Motor Coach Employees, supra,* at p. 332 [29 L.Ed.2d at p. 509].) This position has never commanded the support of a majority of the members of the court. (*Id.,* at p. 290 [29 L.Ed.2d at pp. 484-485].)

[8]We have previously indicated our rejection of contrary decisions by the courts of Illinois and Wisconsin. (*Musicians Union, Local No. 6* v. *Superior Court, supra,* 60 Cal.2d at p. 712, fn. 8.) We find equally unpersuasive the decisions of our sister states in *People* v. *Bush* (1976) *supra,* 39 N.Y.2d 529; *Taggart* v. *Weinacker's Inc., supra,* 283 Ala. 171, and *Hood* v. *Stafford* (1964) 213 Tenn. 684, 694-695 [378 S.W.2d 766, 771].

injunction must therefore be struck down. In view of the foregoing conclusion, we need not consider the Union's contention that its picketing was a constitutionally protected exercise of First Amendment rights.[9]

The order granting a preliminary injunction is reversed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Clark, J., and Richardson, J., concurred.

---

[9]We also note that while the instant case was pending in this court, the Supreme Court in *Hudgens* v. *NLRB, supra,* 424 U.S. 507 [47 L.Ed.2d 196, 96 S.Ct. 1029], overruled *Food Employees* v. *Logan Plaza* (1968) 391 U.S. 308 [20 L.Ed.2d 603, 88 S.Ct. 1601]—a case upon which the Union relies for its argument that its picketing was protected by the First Amendment. In view of the fact that the parties have not had an adequate opportunity to brief or argue the effect of *Hudgens* upon the instant controversy, it would be particularly inappropriate for this court to render a decision on this question at this time.