Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued April 14, 2003                    Decided July 1, 2003

No. 02-1038

WAREMART FOODS, *D/B/A* WINCO FOODS, INC.,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

UNITED FOOD & COMMERCIAL WORKERS UNION LOCAL 588,
INTERVENOR

———

On Petition for Review and Cross–Application
for Enforcement of an Order of the
National Labor Relations Board

———

*Mark S. Ross* argued the cause for petitioner. With him on the briefs were *Nick C. Geannacopulos* and *Samuel T. McAdam.*

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Anne Marie Lofaso*, Senior Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were *Arthur F. Rosenfeld*, General Counsel, *John H. Ferguson*, Associate General Counsel, *Aileen A. Armstrong*, Deputy Associate General Counsel, and *David S. Habenstreit*, Attorney. *Richard A. Cohen*, Senior Attorney, entered an appearance.

*James B. Coppess* argued the cause for intervenor. With him on the brief were *Lynn K. Rhinehart*, *Peter J. Ford*, *Laurence S. Gold* and *Timothy Sears*.

Before: EDWARDS, RANDOLPH, and TATEL, *Circuit Judges*.

## ORDER

RANDOLPH, *Circuit Judge*: In this petition for judicial review of an order of the National Labor Relations Board, and the Board's cross-petition for enforcement, the employer— WinCo Foods, Inc. (WinCo)—has moved for certification to the California Supreme Court of a question of California law pursuant to CAL. R. CT. 29.8(a).[1] We will grant the motion for the reasons that follow.

The Administrative Law Judge, whose decision the Board affirmed, found these facts. WinCo owns and operates a retail supermarket in Chico, California. *Waremart Foods*, 337 N.L.R.B. No. 41, 2001 WL 1699624, at *3 (Dec. 20, 2001). The store stands alone adjacent to its parking lot on a parcel of about 10 acres. *Id.* Customers can enter the store only from the parking lot. *Id.* Apart from allowing the Girl Scouts to sell cookies outside the store entrance shortly after it opened, WinCo has prohibited solicitors from operating on store premises and sought injunctive relief against such activity in the California courts. *See id.* at *4, *10; *Waremart, Inc. v. Progressive Campaigns, Inc.*, 102 Cal. Rptr. 2d 392,

---

[1] "On request of . . . a United States Court of Appeals, . . . the Supreme Court may decide a question of California law if: (1) the decision could determine the outcome of a matter pending in the requesting court, and (2) there is no controlling precedent." CAL. R. CT. 29.8(a).

393 (Cal. Ct. App. 2000), *review granted*, 19 P.3d 1128 (Cal. 2001), *review dismissed and cause remanded*, 45 P.3d 1161 (Cal. 2002).

In April 1999, union organizers entered the Chico store's parking lot and began distributing handbills to WinCo customers. 337 N.L.R.B. No. 41, 2001 WL 1699624, at *4. The handbills, some of which purported to come from an organization entitled "Mothers Against WinCo," urged shoppers not to patronize WinCo stores. *Id.* at *4–5. The store manager asked the union organizers to stop handbilling, and when they continued, the manager returned to the store and called the police. *Id.* at *5–6. By the time the police arrived, the handbilling was over for the day and the organizers left. *Id.* at *6.

The Board ruled that WinCo had violated § 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), by prohibiting nonemployee union representatives from engaging in customer handbilling. 337 N.L.R.B. No. 41, 2001 WL 1699624, at *1, *11. In the Board's view, *Lechmere, Inc. v. NLRB*, 502 U.S. 527 (1992), was inapposite, despite the Supreme Court's holding that employers do not commit unfair labor practices when they bar nonemployee union organizers from distributing literature on their property (so long as the organizers have other means of reaching the employees). This case was different, the Board thought, because "under California property law, [WinCo] did not have a right to exclude union representatives from its property. *Sears, Roebuck & Co. v. San Diego District Council of Carpenters*, 25 Cal. 3d 317[, 599 P.2d 676] (1979) [*Sears II*]." 337 N.L.R.B. No. 41, 2001 WL 1699624, at *1.

As against this, WinCo argues that the Board misconstrued California law and that the owner of a stand-alone retail store may, pursuant to state trespass law, exclude those seeking to engage in expressive activity on its property. If state law does give labor unions some special exemption, as the Board's analysis of *Sears II* may suggest, then, WinCo maintains, the state law violates the First Amendment to the Constitution in light of *Police Dep't of Chicago v. Mosley*, 408 U.S. 92 (1972),

and *Carey v. Brown*, 447 U.S. 455 (1980). In *Mosley* the local ordinance prohibited picketing in the vicinity of schools during school hours; in *Carey* the state law prohibited picketing of residences. Both the ordinance and the state law contained an exemption for labor picketing. In both cases the Supreme Court held that the exemption constituted content discrimination in violation of the First Amendment. *See Mosley*, 408 U.S. at 95 ("The central problem with Chicago's ordinance is that it describes permissible picketing in terms of its subject matter."); *Carey*, 447 U.S. at 466 (rejecting the idea that "labor picketing is more deserving of First Amendment protection than are public protests over other issues").

We need not reach the constitutional issue thus raised unless California law is as the Board supposed. The legality under state law of the union organizers' activities on WinCo's property is critical to the outcome of the case in another respect, as counsel for the union acknowledged at oral argument. Unless California law is what the Board says it is, this case is indistinguishable from *Lechmere*. *See ITT Indus., Inc. v. NLRB*, 251 F.3d 995, 1000–03 (D.C. Cir. 2001). Lechmere maintained a no-solicitation policy at its store in the Lechmere Shopping Plaza in Connecticut. After union organizers began handing out leaflets in the shopping center's parking lot, which Lechmere jointly owned, the company's manager barred them from the property. In Connecticut, as elsewhere, a "conditional or restricted consent to enter land creates a privilege to do so only in so far as the condition or restriction is complied with." RESTATEMENT (SECOND) OF TORTS § 168 (1965). *See New York New York, LLC v. NLRB*, 313 F.3d 585, 589 (D.C. Cir. 2002). The organizers in *Lechmere* were therefore trespassers, and the Supreme Court described them as such. 502 U.S. at 540.

To determine whether California law provides otherwise, we have examined the opinions of the California courts cited by the Board and the ALJ, and by the parties in their briefs and supplemental filings. The Board relied mainly on the 1979 decision in *Sears II*, a case on remand from the Supreme Court's decision in *Sears, Roebuck & Co. v. San Diego Dist. Council of Carpenters*, 436 U.S. 180 (1978). Union

organizers picketed a stand-alone Sears retail store in Chula Vista, California. The picketing occurred on Sears's property—on walkways leading to the store or in the store parking lot. Sears brought a trespass action against the union and the trial court granted a preliminary injunction. On appeal, the California Supreme Court held that the National Labor Relations Act preempted state trespass law. *Sears, Roebuck & Co. v. San Diego Dist. Council of Carpenters*, 553 P.2d 603 (Cal. 1976) (*Sears I*). The Supreme Court reversed, holding that the labor preemption doctrine did not apply to the trespassory aspects of union picketing. 436 U.S. at 198–207. Although it referred throughout its opinion to the union organizers as trespassers, the Court dropped a footnote stating that it did not mean to foreclose the California Supreme Court from considering, on remand, whether the organizers had committed a trespass under state law. *Id.* at 185 n.8.

In the meantime the California Supreme Court, in *Robins v. Pruneyard Shopping Center*, 592 P.2d 341 (Cal. 1979), held that the California Constitution protected "speech and petitioning, reasonably exercised, in shopping centers even when the centers are privately owned." *Id.* at 347. The court reasoned that shopping centers had become the functional equivalents of "miniature downtowns" and should be treated as public forums, from which expressive activity cannot be entirely excluded, although it may be regulated by reasonable time, place, and manner restrictions. *Id.* at 345–48. (The Supreme Court so understood the decision and affirmed. *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 83–84 (1980).)

When the *Sears* case returned on remand, the California court for the first time focused on the "Moscone Act," CAL. CIV. PROC. CODE § 527.3, a statute passed in 1975. The Act deprived state courts of jurisdiction to issue injunctions against persons distributing information about a labor dispute in "any place where any person or persons may lawfully be" (§ 527.3(b)(1)) and against "[p]eaceful picketing or patrolling involving any labor dispute" (§ 527.3(b)(2)). Whether subsection (b) meant that picketing as well as information distribution had to occur in a place where the person "may lawfully

be" was unnecessary to decide, according to a three-Justice plurality. 599 P.2d at 681–82. Subsection (a) stated that the Act should be construed in accordance with "existing law." Existing California law, as the plurality saw it in 1979, "establishes that peaceful picketing on privately owned walks outside the employer's store is not subject to injunction." *Id.* at 682. The court then cited and discussed two of its decisions: *In re Lane*, 457 P.2d 561 (Cal. 1969), and *Schwartz-Torrance Inv. Corp. v. Bakery & Confectionery Workers' Union*, 394 P.2d 921 (Cal. 1964). The concurring opinion of one Justice, needed to make a majority, agreed that the injunction should be vacated, but disagreed that the state legislature " 'intended the courts to continue to follow (all) principles of California labor law extant at the time of the enactment of section 527.3.' " 599 P.2d at 687 (Newman, J.) (quoting the plurality opinion, *id.* at 685, but adding the "all"). No explanation followed.

*Lane* held that handbilling by a union representative on the private sidewalk of a stand-alone grocery store was protected by the First Amendment to the Constitution and stated its holding exclusively in those terms: "the fact of private ownership of the sidewalk does not operate to strip the members of the public of their rights to exercise First Amendment privileges on the sidewalk at or near the place of entry to the establishment." 457 P.2d at 565.[2] *Schwartz-Torrance* is not

---

[2] In support, the *Lane* court relied not only on its 1964 decision in *Schwartz-Torrance*, but also on the intervening Supreme Court decision in *Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza*, 391 U.S. 308 (1968). *Logan Valley* held that because a large, privately-owned shopping center served as the "functional equivalent" of a city's business district, labor picketing at the shopping center was protected under the First Amendment and could not be enjoined under state trespass laws. *Id.* at 317–20, 324–25. In other words, the Court considered the private shopping center as if it were a traditional "public forum," a designation that had been reserved for government property in only three categories—streets, parks, and sidewalks. *See Lovell v. Griffin*, 303 U.S. 444 (1938); *Hague v. CIO*, 307 U.S. 496 (1939); *Schneider v. State*, 308 U.S. 147 (1939); Frederick Schauer, *Principles, Institutions,*

as clear: in holding that the owner of a shopping center was not entitled to an injunction against picketing on the shopping center's privately owned sidewalks, the court not only relied on the First Amendment but also suggested that the shopping center might be treated as if it were a publicly owned facility, apparently under state law. *See* 394 P.2d at 923–25.

A recent plurality opinion of the California Supreme Court reads both *Lane* and *Schwartz-Torrance* as resting on the First Amendment to the Constitution rather than on California law. *See Golden Gateway Ctr. v. Golden Gateway Tenants Ass'n*, 29 P.3d 797, 809 & n.11 (Cal. 2001). Like *Sears II*, *Golden Gateway* did not produce a majority opinion. In the residential portion of a retail-apartment complex a tenants' association had been distributing a newsletter door to door. The owner sought to stop the distribution. When the tenants' association refused, claiming that the owner's action violated its right under state law to engage in free speech, the owner obtained a preliminary injunction. On appeal, a three-Justice plurality held that under the California Constitution, the association's free speech rights depended on the existence of state action and here there was none. 29 P.3d at 810. According to the court, "the actions of a private property owner constitute state action for purposes of California's free speech clause only if the property is freely and openly accessible to the public." *Id.* The court distinguished *Robins* on the ground that the shopping center there was the "functional equivalence ... [of] a traditional public forum" and extended an "open and unrestricted invitation to the public to congregate freely." *Id.* at 809. The apartment complex, in contrast, is not open to the public; access is

*and the First Amendment*, 112 HARV. L. REV. 84, 97–98 & n.71 (1998).

Eight years after *Logan Valley*, the Court overruled the decision. *Hudgens v. NLRB*, 424 U.S. 507 (1976), held that the First Amendment protected against governmental action and that the First Amendment therefore did not prevent an owner of a private shopping center from barring union members from picketing on the property in violation of state trespass law.

restricted to "residential tenants and their invitees." *Id.* at 810. Therefore the complex, "unlike the shopping center in *Robins*, is not the functional equivalent of a traditional public forum." *Id.*

Four opinions of intermediate appellate courts in California, three rendered before *Golden Gateway* and one after, have held that state law does not provide a free speech right to those seeking to engage in expressive activities on the private sidewalks or in the private parking lots of stand-alone supermarkets. *See Albertson's, Inc. v. Young*, 131 Cal. Rptr. 2d 721, 731–34 (Cal. Ct. App. 2003); *Young v. Raley's, Inc.*, 107 Cal. Rptr. 2d 172, 179–82 (Cal. Ct. App. 2001), *review granted*, 29 P.3d 795 (Cal. 2001), *review dismissed and cause remanded*, 45 P.3d 1162 (Cal. 2002); *Waremart, Inc.*, 102 Cal. Rptr. 2d 392, *review granted*, 19 P.3d 1128 (Cal. 2001), *review dismissed and cause remanded*, 45 P.3d 1161 (Cal. 2002); *Trader Joe's Co. v. Progressive Campaigns, Inc.*, 86 Cal. Rptr. 2d 442, 448–49 (Cal. Ct. App. 1999). Each of the opinions reasoned the stores could not be equated with a traditional public forum. As the court of appeals put it in *Albertson's*, the case decided after *Golden Gateway*, the supermarket and its private surroundings contained "no enclosed walkways, plazas, courtyards, picnic areas, gardens, or other areas that might invite the public to congregate" there. 131 Cal. Rptr. 2d at 733.

Given these developments, we are uncertain whether the 1979 plurality opinion in *Sears II*—which recognized a right to engage in labor picketing in a private parking lot and on private sidewalks outside a stand-alone store—represents current California law. As we have discussed, the *Sears II* plurality appeared to rest on the proposition that any non-disruptive expressive activity there was protected, a proposition no California Supreme Court decision has expressly endorsed and one that has been rejected by decisions of intermediate courts of the state. We recognize that the Ninth Circuit has interpreted California law to protect speech "on the privately-owned sidewalk of a stand-alone grocery store." *NLRB v. Calkins*, 187 F.3d 1080, 1090 (9th Cir. 1999). On questions of state law we follow intermediate state

court decisions unless there is a persuasive indication that the highest court of the state would decide otherwise. *West v. AT&T*, 311 U.S. 223, 237 (1940). We therefore hesitate to follow *Calkins*.

We are also unsure whether *Sears II* should be viewed as creating a special exemption for labor activity, in which event we would have to confront WinCo's First Amendment content-discrimination arguments relying on the Supreme Court's decisions in *Mosley* and *Carey*. We have therefore decided to certify to the California Supreme Court, and agree to follow its answer to, the following questions (*see* Cal. R. Ct. 29.8(b)(2)):

1. Whether, under California law, WinCo had a right to prevent members of the public from engaging in expressive activity in the parking lot and walkways adjacent to its Chico grocery store?

2. Whether, if WinCo did have the general right to exclude members of the public from engaging in expressive activity on its private property, California law nevertheless permitted the union organizers to distribute literature there because they were involved in a labor dispute with the company?

All further proceedings in this case are stayed pending receipt of the California Supreme Court's response. Pursuant to Cal. R. Ct. 29.8(b)(1), WinCo is designated the petitioner if this request is granted. Counsel for WinCo is Mark S. Ross, Seyfarth Shaw, 400 Capitol Mall, Suite 2350, Sacramento, California, 95814. Counsel for the National Labor Relations Board is Anne Marie Lofaso, National Labor Relations Board, 1099 Fourteenth Street, N.W., Washington, D.C., 20570. Counsel for the United Food and Commercial Workers International Union, Local 588, AFL–CIO, is James B. Coppess, 815 Sixteenth Street, N.W., Washington, D.C., 20006. The Clerk is hereby directed to transmit to the California Supreme Court this order, ten copies, a certificate

of service on the parties, and all relevant briefs and excerpts of record. *See* CAL. R. CT. 29.8(c)-(d).

*So ordered.*